ELIZABETH J. BENJAMIN v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

**In Banc, November 14, 1912.**

1. **NEGLIGENCE: Sudden Start of Street Car: Inference from Facts.** One of the meanings of the word "suddenly" is happening without notice, coming unexpectedly. So where the charge was that the street car started suddenly as the plaintiff was getting upon it as a passenger, and threw her down and injured her, it is only necessary, in order for the jury to decide whether

the car suddenly started, for them to know whether, under the circumstances, she had reason to expect it would start as and when it did. It is not necessary, to support such a charge, that the witnesses testify that the car started suddenly; the real question is, could reasonable men say that under the circumstances plaintiff could have expected the car to start as it did, and have guarded against it?

2. ————: ————: **When Word "Suddenly" Important.** Not much importance is to be attached to the word "suddenly" used in an allegation to the effect that while plaintiff was in the act of getting on a car defendant "negligently started said car and negligently suddenly started said car." Whether or not the act of starting the car, as and when it was started, was negligence, depends on the circumstances, and likewise whether or not the start was sudden, in the sense that it came without warning and unexpectedly, depends upon circumstances. It is not lawful under all circumstances to start street cars even in the usual way before passengers have taken their seats, and whether or not it is negligence in a particular case depends on circumstances.

4. ————: ————: **Large Aged Woman.** The mere fact of starting a street car before a passenger has taken his seat is not negligence *per se*. But one who is in the act of getting on a car is a passenger, and the railway company owes him the exercise of the highest degree of care practicable that a prudent person experienced in that business could exercise to secure his safety; and when the conductor saw a woman fifty-seven years old, weighing two hundred pounds, with her one foot on the step and her other on the platform, or raised to get on the platform, and he started the car to move, even though it moved in the usual way, and she was thereby thrown down and was injured, the court cannot, when she sues for those injuries, declare as a matter of law that the conductor, whether he in fact saw her or not, since it was his duty to see her, exercised that high degree of care which the law imposes; but whether he did exercise such care was a question for the jury, under proper instructions.

5. ————: ————: **Physical Facts.** The court cannot declare as a matter of law that when a person is standing erect on a platform of a car facing the direction in which the movement is to be made, the movement when it comes will carry the feet forward quicker than the rest of the body and cause the body to incline backward. To draw that conclusion from the law of physics is not to take into consideration the natural and involuntary resistance the person whose equilibrium is about to be disturbed offers to motion.

6. **APPELLATE PRACTICE: Appeal From Order Granting New Trial: Consideration of Other Grounds.** Where the verdict was for defendant, and it appeals from an order granting a new trial, the appellate court will consider any other ground, aside from the one specified in the order, by which the order may be sustained, if its attention is timely and properly called to such other ground by respondent, but it will not search the record to find some other rulings that will justify the order.

7. ————: **Passenger: Safely on Platform: Absolving Defendant of Further Care.** An instruction telling the jury that if "plaintiff got upon the car while it was standing still, and that the car was not started until after she got upon the platform, the verdict will be for defendant," plaintiff being fifty-seven years old and weighing two hundred pounds, and there being evidence that the starting of the car, whether usual or unusual, caused her to fall, is erroneous.

8. ————: **Instruction: False Issue.** Where plaintiff's testimony did not tend to show that the car, as she was getting on it, started with an unusual jerk, and defendant's testimony was to the effect that it started in the usual way, and the only charge of negligence which plaintiff's testimony tended to prove was the starting of the car before plaintiff had time to enter, an instruction telling the jury that "there is no evidence that the car was started with any unusual jerk or motion, and on that issue your finding will be for defendant," should not be given, for there is no such issue as that in the case.

9. ————: ————: **Standing Up in Car.** It is not negligence *per se* to start a street car while passengers are standing up in the car, or while they are standing on the platform or in the vestibule, but under some circumstances it would be negligence, and when those circumstances are present it is a question of fact; and an instruction telling the jury that the starting of the car while plaintiff was standing in the car or in the vestibule or on the platform was not negligence, without any regard to the circumstances, such as that she was fifty-seven years old and weighed two hundred pounds, should not be given.

10. ————: **Contributory: Pleading and Instruction: Too General.** An attempted plea of contributory negligence that "if the plaintiff received any injuries at the time mentioned in said petition the same were caused by the plaintiff's own fault and negligence," is not sufficient; and an instruction that calls for a verdict for defendant if the jury should find "plaintiff was guilty of negligence of any character which directly contributed to the injuries complained of" was still more general, and erroneous. Contributory negligence is an affirmative defense, and must be pleaded to be available, and the facts constituting it must be

pleaded. The pleadings state the issues to the court; the instructions state the issues to the jury. The pleading should state the facts constituting contributory negligence, and the instructions should state the facts that sustain that plea.

11. ———: **Care: Reasonably Practicable.** The use of the word "reasonably" in an instruction telling the jury that "if defendant's servants in charge of the car exercised all the care and prudence that were reasonably practicable, then there was no negligence," introduced an element of confusing uncertainty into the sentence, and is not approved.

12. ———: **Plaintiff as Witness: Presumption Arising From Interest: As In Criminal Case.** An instruction telling the jury that plaintiff is a competent witness, in determining her credibility they should consider her interest in the result of the trial, what she said against her interest the law presumes to be true, and what she said in her own interest the jury are not bound to believe, etc., is erroneous, for two reasons: First, it points out the plaintiff especially, and calls attention to the fact of her interest as an inducement to swear falsely; and, second, in effect, it says that every word she may have uttered against her interest, whether deliberately or falsely, is to be set down as true, and everything she may have said in her own interest is to be scrutinized with care and to be received with caution and suspicion.

13. **TRIAL: Social Intercourse Between Claim Agent and Jurors: Setting Aside Verdict.** The dining at the same table with three of the jurors while the trial was in progress by the claim agent of defendant, and after being cautioned by the presiding judge, his subsequent playing of pool with them and treating them to cigars, though no wrong is shown to have been done, were the ground for which the court granted to plaintiff a new trial after a verdict for defendant; and since the trial judge was in a better position to know whether or not such social intercourse interfered with a fair trial than is the appellate court, its judgment is affirmed.

*Held*, by GRAVES, J., dissenting, with whom FERRISS, J., concurs, that the facts of the case do not warrant the aspersions cast upon the jurors and claim agent, all of whom are shown to be reputable, and their harmless social intercourse was not a sufficient ground for setting the verdict aside.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

AFFIRMED.

*John H. Lucas* and *Charles N. Sadler* for appellant.

(1)   The evidence shows conclusively there was no misconduct upon the part of Clark and the motion for new trial should not have been sustained on that account.   State ex inf. v. Clark, 134 Mo. App. 55; Feary v. Railroad, 162 Mo. 106; Kennedy v. Holladay, 105 Mo. 24; State v. Shipley, 171 Mo. 550.; State v. Gray, 172 Mo. 435; Hamberger v. Rinkel, 164 Mo. 406; Paramore v. Lindsey, 63 Mo. 67; Bank v. Fults & Co., 115 Mo. App. 49; Mule Co. v. Reed, 114 Mo. App. 305; McGraw v. O'Neil, 123 Mo. App. 707; Meriwether v. Knapp & Co., 120 Mo. App. 381.   (2)   The court erred in refusing to give the peremptory instruction in the nature of a demurrer offered by the defendant at the close of plaintiff's evidence, and again at the close of all the evidence; therefore it was error to grant a new trial in any event.   Scroggins v. Railroad, 120 S. W. 731; Detrich v. Railroad, 127 S. W. 603; Beave v. Transit Co., 212 Mo. 331; Roscoe v. Railroad, 202 Mo. 576; Orcutt v. Bldg. Co., 201 Mo. 424; McGrath v. Transit Co., 197 Mo. 97; Ingles v. Railroad, 129 S. W. 492; Hite v. Railroad, 130 Mo. 140; Curley v. Railroad, 104 Mo. 211; 2 White on Personal Injuries on Railroads, Sec. 661; Nugent v. Milling Co., 131 Mo. 241; Pryor v. Railroad, 85 Mo. App. 378; Bartley v. Railroad, 148 Mo. 138; Allen v. Transit Co., 183 Mo. 435; Saxton v. Railroad, 98 Mo. App. 503. (3)   The verdict of the jury herein being manifestly for the right party it should not have been set aside by the court and a new trial granted even though all the errors charged in the motion for new trial had been committed.   R. S. 1899, Sec. 865; Quinn v. Railroad, 218 Mo. 545; Mockowik v. Railroad, 196 Mo. 568; Baustian v. Young, 152 Mo. 325; Bassett v. Glover, 66 Mo. 381; Mtg. & Tr. Co. v. Crutcher, 169 Mo. 458; Fairbanks v. Long, 91 Mo. 628; County v. Bank,

157 Mo. 137; Bushey v. Glenn, 107 Mo. 331; Henry v. Railroad, 113 Mo. 526; Moore v. Railroad, 176 Mo. 545; Burns v. City, 131 Mo. 372; Swope v. Ward, 185 Mo. 329; State v. Jennings, 134 Mo. 281; Carr v. Railroad, 195 Mo. 224; Wabash v. Sloop, 200 Mo. 198.

*A. F. Smith, Boyle & Howell* and *Guthrie, Gamble & Street* for respondent.

(1) The trial court properly granted a new trial on account of the misconduct of the defendant. Tatlow v. Grantham, 66 Mo. App. 509. (2) Defendant contends that the verdict in this case should be sustained because the evidence fails to establish a cause of action. The plaintiff in this case was in the act of getting upon a car at its usual stopping place while the car was standing. She was a large, heavy woman. While she was in the act of moving from a step to the platform, where a movement of the car would throw her off of her balance, the car was started up. Clearly this state of facts presented at least a question for the jury to say whether this act of the defendant was or was not negligent. Brady v. Traction Co., 140 Mo. App. 421. (3) Defendant contends that the verdict of the jury should be sustained because it was for the right party. A judgment is not to be affirmed because the verdict is for the right party, when there is substantial evidence in favor of the plaintiff and error committed on the trial of the case. Error is presumed to be prejudicial, and when error is prejudicial, a verdict cannot be for the right party, unless, under all the facts and circumstances, the court would have to direct a verdict for the defendant. In other words, the ruling that a verdict was for the right party is practically a ruling that a demurrer to the evidence should have been sustained, and in such case every intendment is in favor of the plaintiff. Phelan v. Paving Co., 115 Mo. App. 432; Bender v. Railroad, 137

Mo. 245; Buesching v. Gas Light Co., 73 Mo. 219; Donohue v. Railroad, 91 Mo. 357; Montgomery v. Railroad, 181 Mo. 477; Powers v. Transit Co., 202 Mo. 280; Wilson v. Board of Education, 63 Mo. 137; Moore v. Transit Co., 194 Mo. 1; Franke v. St. Louis, 110 Mo. 516; Grocery Co. v. Hudson, 147 Mo. App. 31. (4) The court erred in instructing the jury on behalf of defendant. (a) The court erred in giving defendant's instruction 3. This instruction does not state the law. If plaintiff was on the platform, but was in a position of peril, the defendant was bound to wait until she could get into a safe position. (b) The court erred in giving defendant's instruction 4. The vice of this instruction is well stated in Brady v. Traction Co., 140 Mo. App. 421, and Lehner v. Railroad, 110 Mo. App. 220. (c) The court erred in giving defendant's instruction 5. If a passenger is in simply a "reasonably safe" position, the carrier is not exercising the highest degree of care in starting its car under such circumstances, even though it may start the same with merely the "usual" jerk. (d) The court erred in giving defendant's instruction 6. This instruction is subject to exactly the same vice which was held to be fatal error in Allen v. Railroad, 183 Mo. 432. (e) Instruction 8 was erroneous. The instruction imposed upon the defendant a degree of care greatly less than that required by law. It required the defendant to use only such care as was reasonably practicable, whereas, the duty of a carrier is to exercise the very highest degree of care. Loftus v. Railroad, 220 Mo. 470; Price v. Railroad, 220 Mo. 435. (f) Defendant's instruction 10 was erroneous. This instruction has been disapproved in a number of recent cases in this court. Zander v. Transit Co., 206 Mo. 461; Stetzler v. Railroad, 210 Mo. 712.

VALLIANT, C. J.—Plaintiff sues for damages for personal injuries alleged to have been sustained

by her through the negligence of the defendant while she, as a passenger, was attempting to board one of defendant's street cars. The amount of damages claimed is $10,000.

The negligence charged in the petition is: "While the plaintiff was in the act of getting upon said car, and while she was in a position of peril, all of which was known or, by the exercise of due care, should have been known to the defendant, it negligently started said car and negligently suddenly started said car, and the plaintiff by reason of the said negligent acts of the defendant, was thrown and caused to fall against parts of said car." The answer was a general denial and what was probably intended as a plea of contributory negligence; it was in these words: "And for further answer, defendant says that if plaintiff received any injuries at the time mentioned in said petition, the same was caused by plaintiff's own fault and negligence."

The trial resulted in a verdict for the defendant, but the court sustained the plaintiff's motion for a new trial and from that order the defendant appealed.

The testimony on the part of the plaintiff tended to prove as follows:

Plaintiff is a woman fifty-seven years of age and at the time of the accident weighed about one hundred and ninety pounds. She and a woman companion stood at a crossing waiting for the street car. When the car reached the crossing it stopped as to receive passengers, and while it was standing still plaintiff proceeded to go aboard of it; she got on the step and with one foot on the step and the other on the platform she was in the act of getting on the platform with both feet when the car started to move and she fell on her knee striking it on the step that leads from the platform (or vestibule) into the car. She arose and went into the car and sat down, not realizing at the time any severe injury, but such injury developed

afterwards. Plaintiff's companion followed her, stepping on the step just after plaintiff and just as plaintiff·stepped on the platform; she did not see plaintiff fall, but saw her rise and the two went into the car and sat down together, and when the car reached their destination the two walked out of the car and walked home.

On the part of the defendant the evidence tended to show that when the car stopped at the crossing where the two women got on, they were both standing near the curb talking and gave no indication of intention to get on the car, therefore the conductor gave the signal to start. He was at the time inside the car. When the bell rang and the car started the two women ran and jumped on the car and neither of them fell. They said something to the conductor about running off and leaving them, and when they were getting off the car at the point of their destination the plaintiff said something to the conductor about her knee hurting her.

There was evidence for and against the plaintiff's claim of injury and the degree thereof. There was no evidence. as to the manner of the starting of the car as the plaintiff was getting on, that is, whether it was sudden or fast or slow. Her testimony. was that it started to move after she got on the step; the· testimony of defendant was that she ran and got on the step after the car was in motion. That was the main issue of fact in the case. At the close of plaintiff's evidence, the defendant asked an instruction in the nature of a demurrer to the evidence which was overruled and exception taken. The cause was submitted to the jury on instructions for plaintiff and for defendant, some of which will be discussed in the course of this opinion.

I. Appellant insists that its instruction in the nature of a demurrer to the evidence should have been

given because there was no evidence that the car was "suddenly started," and also because the starting of the car could not have had the effect to throw the plaintiff forward to fall on her knee.

(*a*) The charge in the petition is that the defendant "negligently started said car and negligently suddenly started said car."

The word "sudden" is sometimes used to signify quick or rapid, and if that is the sense in which it is used in the petition there was no evidence to sustain the allegation. But the idea ordinarily conveyed by the word "sudden" is a happening without notice, a coming unexpectedly (Webster), and that is doubtless the sense in which the pleader used it in this instance, and if so the determination of whether or not the movement was sudden, that is, unexpected, unlooked for, is a conclusion to be drawn from the facts rather than the opinion of a witness. When an occurrence is expected, one who may be affected by it will ordinarily take care to meet it, but if it is not to be expected no such care will be taken. For the jury to decide whether or not this car, in respect to the plaintiff, was suddenly started, it was only necessary for them to know whether or not under the circumstances the plaintiff had reason to expect it would start as and when it did; that would be a conclusion for the jury to draw from the circumstances although no witness said the start was sudden. The question then is, supposing the woman's story to be true, and the conductor saw her, as it was his duty to do, could reasonable men say that under the circumstances she should have expected the car to start as it did and have guarded against the consequence?

We do not attach a great deal of importance to the word "suddenly" as there used and in its connection. The petition states that the defendant negligently started the car to move while she was in the attitude of passing from the step to the platform or

to the door of the car. The charges are that it was negligently started and that it was negligently suddenly started. Whether or not the act of starting the car, as and when it was started, was negligence depends on the circumstances and whether or not the start was sudden in the sense that it came without warning and unexpectedly also depends on the circumstances.

When the plaintiff was in the act of getting on the car, she was a passenger and the defendant owed her the exercise of the highest degree of care practicable that a prudent person experienced in that business could exercise to secure her safety. When the conductor saw the plaintiff, a woman fifty-seven years old, weighing nearly two hundred pounds, with her one foot on the step and her other on the platform, or raised to get on the platform, and he started the car to move, even though it moved in the usual way, can it be said that his act was so clearly within the scope of his duty that the court should as a matter of law have so declared and have taken the case from the jury? The mere fact of starting a car before a passenger has taken his seat is not negligence *per se.* Common experience shows that it is the general custom to start street cars before passengers are seated, and the progress of a car in a great city would be slow indeed if the law absolutely forbade that practice. But whilst it is not positively unlawful to do so under any circumstances, yet it is not lawful to do so under all circumstances, and whether or not it is negligence to do so in a particular case, is a question of fact in the light of the circumstances. If for example a passenger attempting to get on a car in the position the plaintiff says she was, were a cripple on crutches, could any one say that the conductor would be justified in starting the car until the passenger had reached a place of reasonable safety? The condition of the man on crutches and

that of an old woman of unwieldy size, as calling on the conductor for caution, may differ in degree, but not in kind. If the plaintiff's story is true, the question of whether the conductor in starting the car, as and when he did, exercised that high degree of care that devolved on him to secure the safety of his passenger, was one which should have been submitted to the jury under proper instructions.

(b) It is argued that if the car was started as the plaintiff says it was, it would be a physical impossibility for the motion to have thrown the body of the plaintiff forward to fall on her knee. The argument invokes the physical fact that when a person is standing erect on a movable platform facing in the direction the movement is to be made, when the movement comes it will carry the feet forward quicker than the rest of the body and cause the body to incline backward. That is so, but to draw the conclusion that the learned counsel draw from that law of physics, they do not take into account the natural or involuntary resistance the person whose equilibrium is disturbed offers to the motion, especially if it is a sudden movement. In resisting the force that would throw the body backward and in the struggle to recover an upright position, the result would depend upon the force exerted either way and on which would be the greater.

The court in this case could not, as a matter of law, decide what the result would be.

The action of the trial court in refusing to take the case from the jury was not error.

II. When a motion for a new trial is sustained and the court states in the order the ground on which it bases its ruling, if the appellate court should conclude that for the ground stated the new trial should not have been granted, it will reverse the order grant-

245 Mo.—39

ing the new trial unless its attention is called to some other ruling of the trial court which justified the order. In an appeal from an order granting a new trial, the appellate court is not bound to search the record to find some other point than that assigned by the trial court, but respondent has the right to bring to the notice of the court any other point in the record that will sustain the ruling, and when the point is so brought to the notice of the appellate court it will be considered. [Millar v. Madison Car Co., 130 Mo. 517; Emmons v. Quade, 176 Mo. 22.]

In the case at bar the trial court specified in its order granting a new trial the ground on which the order was based. The respondent, although contending that the ground specified was sufficient to justify the order, nevertheless contends that even if that ground should be adjudged insufficient there were other grounds that justified it, and has proceeded in her brief to point out those grounds, and those we will now consider before taking up the ground specified in the order. They relate to certain instructions given at the request of the defendant.

(a) The third instruction so given was: "The court instructs the jury that if you find and believe from the evidence that the plaintiff got upon the car while the same was standing still, and that the car was not started until after the plaintiff got upon the platform of said car, then your verdict will be for the defendant."

Under that instruction if the car was standing still when the plaintiff started to get on it, and it so stood until she had got on the platform on her way into the car, then, although the car was then given a motion by which she was thrown forward and fell on her knee and injured, the defendant was not liable. That instruction absolved the defendant from all liability for failure to care for the safety of the plaintiff in her further progress towards a seat in the car after

she got on the platform, and although she may have been thrown down and hurt by the motion of the car, still if the motion did not come until after she had reached the platform, the defendant is not liable, no matter what circumstances or whose fault. Defendant says that there was no evidence of any unusual starting of the car, and that is so, but there was evidence that that starting, whether usual or unusual, caused the plaintiff to fall. If therefore a start in the usual way results in the throwing down and injuring of a passenger, who happens to be an unusually large woman, fifty-seven years old, while she is on the platform, without fault herself trying to make her way into the car, the court would have no right to tell the jury as a conclusion of law that the defendant had exercised that high degree of care for the safety of its passengers which the law requires. On the contrary, it should be left to the jury under proper instructions to say whether under the circumstances due care was exercised. Common sense dictates the difference in the care that is demanded of a carrier of passengers in reference to a woman fifty-seven years old of nearly two hundred pounds weight and that required in reference to a man or woman young and lithe.

That instruction was erroneous.

(b) "4. The court instructs the jury that there is no evidence that the car was started with any unusual jerk or motion, and on that issue your finding will be for the defendant."

There was no such issue as that in the case. The plaintiff's testimony did not tend to show that the car started with an unusual jerk and the defendant's testimony was to the effect that it started in the usual way. The only charge of negligence which the plaintiff's testimony tended to prove was the starting of the car before the plaintiff had time to safely enter. It makes no difference whether the motion was usual

or unusual, if it came in such a way as to throw the plaintiff down when she was exercising the care for her own safety that a person of ordinary prudence in her condition and position would have exercised, and if the conductor by the exercise of the high degree of care that devolves on the carrier could have seen her condition and position and realized her peril, he was negligent in starting the car as and when he did. Therefore that instruction should not have been given.

(c) "5. The court instructs the jury that it is not negligence to start a street car when passengers are standing up in the car, and if you find that plaintiff was in the vestibule of said car, standing up in a reasonably safe position, when the car started, and that the car was not started in a negligent manner, but was started without any unusual jerk or jar, then defendant was not guilty of any negligence, and plaintiff cannot recover."

What we have above said in commenting on instruction 3 applies to this instruction. It cannot be declared negligence *per se* to start a car while passengers are standing up in the car, nor can it be said that it is negligence *per se* to start the car while passengers are standing on the platform or in the vestibule, but under some circumstances it would be negligence and when those circumstances are present the question of negligence is one of fact.

It was error to have given that instruction.

(d) "6. The court instructs the jury that if you find and believe from the evidence that the plaintiff was guilty of negligence of any character which directly contributed to the injuries complained of, then there can be no recovery in this case, and your verdict will be for the defendant."

That instruction was as inappropriate to the charge of the plaintiff's negligence contributing to the

injuries complained of as a like instruction would have been to the charge of defendant's negligence causing the injuries.   Facts constituting the negligence must be pleaded, and specified in the instructions.   It has been held that the pleader may charge general negligence or special negligence, and the former will be sufficient in the absence of a motion to make more definite and certain.   And it is not always that such a motion will be sustained, because the facts may be of a character beyond the knowledge of the party pleading and peculiarly within the knowledge of the other party; as for example, when a train is derailed.   But even in the pleading of general negligence the facts must be stated with sufficient certainty to point the adversary to the event or the occurrence in the happening of which, or in the suffering of which to happen, negligence is charged.   For example, if a street car in which a plaintiff is riding, is suffered to come in violent collision with some object which causes the car to be turned over and the passenger injured, it will be sufficient to charge that the defendant negligently suffered the collision to occur.   In such case the passenger is not presumed to know just what the cause of the collision was and therefore he is not bound to state it in his pleading. But even in such case it would not be sufficient for the passenger to say in his petition that on a certain day he was injured through the negligence of the defendant, nor would the court be justified in giving the jury an instruction that if they should find from the evidence that the defendant was guilty of negligence of any character that resulted in injury to the plaintiff the verdict should be for the plaintiff.

The pleadings should state the issue to the court, the instructions should state the issue to the jury. Contributory negligence is an affirmative defense and must be pleaded to be available.   [Donovan v. Railroad, 89 Mo. 147; Stone v. Hunt, 94 Mo. 475.]    And

the facts constituting the contributory negligence must be pleaded. [Harrison v. Railroad, 74 Mo. 364, l. c. 369.]

If, however, the plaintiff, in his effort to make out his own case, shows that he was guilty of negligence that contributed to his injuries, he cannot recover, even if there was no plea of contributory negligence. But there is no such fact in this case.

In the case at bar the attempted plea of contributory negligence is: "If the plaintiff received any injuries at the time mentioned in said petition the same were caused by the plaintiff's own fault and negligence." That was not sufficient. But the instruction was even more general than the plea; it called for a verdict for the defendant if the jury should find that the "plaintiff was guilty of negligence of any character which directly contributed," etc. Suppose the court had given an instruction for the plaintiff authorizing a verdict for her, if the jury should find that the defendant had been guilty of negligence of any character whatever which caused the injuries complained of, what would be thought of such an instruction? The giving of that instruction was error.

(e) In defendant's instruction 8 the jury were told that "if defendant's servants in charge of the car in controversy exercised all the care and prudence that were reasonably practicable, then there was no negligence." The complaint of that instruction is the employment of the word "reasonably." The court in an instruction at the request of plaintiff had already told the jury that it was "the duty of a carrier of passengers to exercise the highest degree of care that can be reasonably expected of prudent men engaged in that line of business to carry its passengers safely and a failure of such carrier to use such care is negligence on its part." And in the same instruction the degree of care devolving on the passenger was defined to be ordinary. The adverb "reasonably" used in the

instruction to qualify the adjective "practicable," introduces an element of uncertainty into the sentence. The duty of the carrier is to exercise the highest degree of care practicable. The word practicable means "capable of being done or accomplished with available means or resources." [Webster.] The element of reasonableness is in that definition. What is unreasonable is not practicable. But when the word "reasonably" is used to qualify the word "practicable," it is confusing and is liable to misconstruction. The law is always reasonable, and it considers it reasonable to require of carriers a high degree of care, but that fact would not justify an instruction to the jury that the law requires the carrier to exercise a reasonably high degree of care. In that connection the word "reasonably" would so qualify the word "high" as to reduce the phrase to "reasonable care." We do not approve the word "reasonably" as used in this instruction, but if that were the only error in the case we would not say the error was sufficient to justify the granting of a new trial.

(f) Defendant's instruction 10 is as follows:

"The court instructs the jury that while the plaintiff is a competent witness in this case, yet in determining what weight and credit you will give to her testimony, you should consider her interest in the result of the trial, and that she is the plaintiff testifying in her own behalf. Whatever she may have said against her own interest, the law presumes to be true, because against her interest; but what she may have said in her own behalf you are not bound to believe, but you may treat the same as true or false, just as you may believe the same to be true or false, when considered in connection with all the evidence in the case."

That instruction is bad for two reasons: First, it points out the plaintiff especially, calls attention to the fact of her interest as an inducement to her to

swear falsely; and second, in effect, it says that every word that she may have uttered that militates against her interest, whether deliberately or thoughtlessly, is to be set down as truth, while every thing she may have said in her own interest is to be scrutinized with care. For those reasons an instruction to the like effect and in nearly the same words was condemned in Stetzler v. Railroad, 210 Mo. 704, l. c. 713-14. To the same effect, also, are the following cases: Conner v. Railroad, 181 Mo. l. c. 415; Montgomery v. Railroad, Id., 477; Sheperd v. Transit Co., 189 Mo. 362; and Zander v. Transit Co., 206 Mo. 445.

For the errors in those instructions the court would have been justified in granting a new trial, even if the cause assigned in the order was not sufficient.

III. We come now to a consideration of the cause assigned by the court for sustaining the motion for a new trial, the alleged misconduct of one of the men connected with the claim department of the defendant corporation.

The trial occurred in Independence, which is not a very large city and which contains but one principal tavern, where, during the sessions of the circuit court, it is usual for persons attending, judge, lawyers, litigants, jurors, etc., to go for their midday meal. During the second day of the trial of this cause the judge, having gone to that tavern for his dinner, noticed at another table five men sitting, three of whom he recognized as jurors in the case on trial, and the two others were attending court in the interest of the defendant and were connected with the defendant's claim department. The attendance of those two men on the court was in the regular and legitimate course of their duties. At the time these five men were eating dinner at the same table, the dining room contained other tables and all of them were occupied. When the judge saw the men at the table he imme-

diately arose from the table at which he was sitting
and went to another table at which one of the attor-
neys for the defendant was seated taking his meal,
and called the attorney's attention to the fact that
those two men were taking dinner at the same table
with the three jurors and told him it was not proper.
The attorney soon after left the dining room and beck-
oned to one of the two men, the claim agent, who came
out, and asked him if he had invited those jurors to
take dinner with him, or if he was to pay for their
meal, to which he replied in substance that he had
not invited the jurors, was not at all responsible for
their action in taking seats at that table and was not
to pay for their meal, that their sitting down at the
public table was a matter that he had no control of
and nothing to do with. Before going on the bench
in the afternoon the judge called the defendant's at-
torney and one of the plaintiff's attorneys into his
chambers, and mentioned the circumstances to them
and said to the attorney for the plaintiff that if he so
desired the court would discharge the jury and con-
tinue the case; the attorney said that he did not so
desire, but suggested that the judge have the claim
agent called and caution him against intercourse with
the jurors. To that suggestion the attorney for de-
fendant objected, and said that he himself would cau-
tion him. The next day, the trial still in progress,
at the noon recess, after dinner, the claim agent was
.standing at the door of the tavern, the three jurors
above mentioned passed and one of them said to the
claim agent that they were just going to play a game
of pool and asked him to join them in the game, to
which he consented, accompanying them to the pool
room; the four played several games of pool together,
in which, the claim agent, not being the loser, did not
pay for the games, but they were paid for by the oth-
ers. There were other pool tables in the room at which
a number of men were playing. The game being over

the claim agent invited the three men with whom he had been playing to take cigars, they accepted, each took a cigar and the claim agent paid for them, total twenty cents. Neither during the dinner the day before, nor during the games of pool was any thing said about the case on trial. The three jurors were reputable business men and the claim agent was a reputable young attorney of the bar. The evidence shows that there was nothing criminal in word or deed committed; whether the social intercourse between the claim agent and the three jurors had any influence on their minds to warp their judgment is left alone to conjecture.

The court sustained the motion for a new trial for this conduct of the claim agent and the three jurors.

The meeting of the men at the public dinner table is shown to have been entirely accidental and innocent. We gather from the testimony that the claim agent and his assistant were already seated at the table when two of the jurors came in, and the other tables in that part of the dining room being occupied, they, seeing seats at this table vacant, took them and soon the third juror came in and joined the two others. The judge came in afterwards and passed down to the other end of the dining room and took a seat at a table there, and after he was seated, seeing the five men at the other table, probably thought they had come in together by invitation or design and he thought it looked badly, so he brought it to the notice of defendant's attorney. If the social intercourse between these men had ceased there, it is probable the judge would have taken no further notice of it. But after the conversation between the judge and the two attorneys in his chambers he had a right to presume that the attorney for the defendant had cautioned the claim agent to cease holding social intercourse with the jurors, and therefore when on the next day he was in-

formed that they were playing pool together he had cause to think that his admonition had been disregarded, and that the claim agent was acting in disobedience to the order given. For that reason he granted the new trial.

The trial judge has more power to direct the course of justice in the trial of a cause than any tribunal that may have charge of the case after him. Not everything that occurs during the trial, with its full influence as discerned by the trial judge, can be shown in the record that is sent to the appellate court. He not only hears and sees what is said and done, but he discerns its influence and is far better able to judge whether the trial has been fair than is the court that reviews the record. For that reason great deference should be given to his judgment when he grants a new trial.

In the trial of a cause in a court of justice not only should influences that actually work evil be guarded against, but also acts that have the appearance of evil, and these the trial judge has authority to forbid. Not only should courts rightly decide causes, but the trials should be conducted in such a manner that suspicion of wrong will not arise. Confidence in the integrity of the courts is absolutely essential to the maintaining of the State government.

Although in this case no wrong was done by the social intercourse of the claim agent with the jurors, yet the judge had a right to forbid it, and if he had cause to believe that his order was being disobeyed, we cannot say that he abused his discretion in granting a new trial on that account.

The judgment is affirmed.

*Lamm, Woodson, Kennish* and *Brown, JJ.,* concur; *Ferriss, J.,* concurs in paragraphs I and II, and in the result, but dissents from paragraph III. *Graves, J.,* dissents in a separate opinion filed.

Benjamin v. Railroad.

## DISSENTING OPINION.

GRAVES, J.—Paragraph three of this opinion is wrong. Grant it that the trial courts should protect the good names of the courts in all ways possible, yet there is nothing in the facts of this case to call for the action taken by this trial court. Whilst courts should protect their dignity and even see that the parties to a cause shun the appearance of evil, yet the good names of jurors and other parties should not be ruthlessly reflected upon by hasty action of an over-suspicious judge. The facts of this case did not warrant the aspersions cast upon the jurors and this claim agent by the trial court, and the reason assigned by the trial court for setting aside the verdict, should not be sustained, as it is, in our opinion.

This was the matter I had more fully in mind when the case was up in division.

II. The part of the opinion which discusses the instructions given by the court upon the part of the defendant does not meet with my entire approval. Upon rereading the record and the opinion by Judge VALLIANT, I am inclined to the view that there was error in the giving of some of those instructions, but perhaps not to the full extent in the opinion stated. I do not concur in some of the reasoning under this branch of the opinion. However, there is enough error in the instructions to justify a new trial, and for that reason the order granting it should not be disturbed.

III. I suggest further that it is an extremely close question, under the pleadings, whether the evidence for plaintiff justified the submission of the case to the jury at all. It is quite evident when all facts are considered, that were it a case between man and man, and not a case of an old lady against a railway company, the verdict of any average jury would have

been just as this verdict was—for the defendant. It may be that plaintiff's evidence spells a case for a jury, but as the case must be tried, I reserve my further views for such time as it may be necessary to more closely scrutinize the record. Her case may be strengthened upon a retrial, or on the other hand it may be weakened. I dissent from the present opinion for the reason aforesaid.