John T. FARLEY, Plaintiff-Appellant,

v.

JOHNNY LONDOFF CHEVROLET, INC. and Ken Whitney, Defendants-Respondents.

No. 44021.

Missouri Court of Appeals, Eastern District, Division One.

June 26, 1984.

Johnson & Hayes by Harold G. Johnson, St. Ann, for plaintiff-appellant.

Daniel W. Brown, St. Louis, for defendants-respondents.

SATZ, Judge.

Plaintiff, John Farley, purchased a used car from defendant, Johnny Londoff Chevrolet, Inc. (Londoff). Based upon this purchase, plaintiff sued defendant Londoff and its alleged agent, defendant Ken Whitney, on three counts: (1) common law fraud, (2) breach of implied warranty, and (3) violation of Missouri's Merchandising Practice Act, *see* § 407.020 RSMo 1978. Apparently, the cause was submitted to the jury on the fraud count.[1] The jury returned a verdict in favor of plaintiff and against defendants, assessing plaintiff's damages at $2,000 actual and $8,000 punitive. Defendants' motion for a new trial was granted. Plaintiff appeals. We affirm.

During plaintiff's case, plaintiff's counsel called defendant Whitney as a witness. Through him, plaintiff's counsel established that a Bob Boumis apparently was defendant Londoff's sales manager for used cars at the time of the sale in question. Plaintiff's counsel then asked defendant Whitney: "Isn't it true that [Bob Boumis] was convicted in Federal district court."[2] Defendant's counsel made a time-

---

1. We conclude this from the parties' briefs. The record does not show which theory was submitted to the jury.

2. This question was preceded by the following colloquy:

"Q Have you had occasion to see Bob Boumis since 1975?
A Maybe once, just run into him somewhere.
Q Where was that?

ly objection to this question and also requested a mistrial. The court denied the request for a mistrial, sustained the objection and instructed the jury to disregard the question. Plaintiff's counsel then assured the court he would not "talk about [Boumis'] criminal record." During the rebuttal half of his closing argument, however, plaintiff's counsel raised the issue of Bob Boumis again by calling the jury's attention to the fact that "we don't have Bob Boumis, the used car sales manager ..., who was responsible for trade-ins, who was responsible for giving the final approval" and by asking the rhetorical question: "where is he [Bob Boumis] today?" Then, apparently, at the time of and along with their motion for a new trial, defendants filed documents indicating that, during the trial, the news media had reported on the sentencing of Bob Boumis for dealing in drugs.

The trial court based its grant of a new trial on three grounds: (1) the questioning by plaintiff's counsel of defendant Whitney about the conviction of Bob Boumis; (2) the references to Bob Boumis by plaintiff's counsel in closing argument; and (3) the media coverage, during the course of the trial, of the sentencing of Boumis. In its order granting a new trial, the court also stated that "the conviction of Bob Boumis was extrinsic to the issues at bar," and that, at trial, "there should not be interjected extrinsic matter which tends to create bias or prejudice in the minds of the jurors."

■ Our review of the grant of a new trial, as in the instant case, differs from the review of the denial of a new trial. *E.g., Fitzpatrick v. St. Louis—San Francisco Ry. Co.,* 327 S.W.2d 801, 808 (Mo. 1959). We are more liberal in upholding the grant of a new trial than the denial of a new trial. *Id.* at 808; *see, e.g., Girratono v. Kansas City Public Service Co.,* 272 S.W.2d 278, 281 (Mo.1954). When, as here,

the trial court grants a new trial, "we must indulge every reasonable inference favorable to the trial court's ruling, and we may not reverse unless there has been a clear abuse of discretion", *Penn v. Hartman,* 525 S.W.2d 773, 775 (Mo.App.1975); "even though we may feel, on the cold record, that as a [trial] court we might have ruled otherwise." *DeMaire v. Thompson,* 359 Mo. 457, 222 S.W.2d 93, 97 (1949).

■ The trial court's explicitly stated concern was the prejudice worked by defendant's references to the conviction of Bob Boumis. This concern was sensibly reached. Plaintiff's burden was to show he was defrauded. A convicted person is amoral, or, if morality has gradients, a convicted person is more amoral than an honest one. Therefore, a jury could reason that Boumis, "the crook", is the kind of man who would be likely to defraud plaintiff. But, with certain exceptions, evidence of a person's character "will not generally be received to prove that the person ... engaged in certain conduct, or did so with a given intent, on a particular occasion.... The reason for the general rule is that ..., [character evidence] generally ... comes with too much dangerous baggage of prejudice, distraction from the issues ... and hazard of surprise." McCormick, *Evidence,* § 188 (2d ed. 1972). Thus, even if Boumis were a party or a witness, his "bad" character could only be used to impeach him. *Id.* at § 188. Boumis not being a witness simply made the prejudice worked against defendants more acute.

Plaintiff attacks all three grounds used by the trial court. Plaintiff's attack on the first ground is two-fold. Plaintiff argues the question he asked defendant Whitney about Boumis' conviction was proper, but, even if it were improper, the court's admonition to the jury to disregard the question cured any prejudice caused by the question.

Plaintiff notes that prior convictions can be used to impeach a witness. § 491.050

A Maybe a bar or something like that. I don't bum with him.
Q Where is Bob Boumis today?
A I don't know.

Q Have you heard where he may be?
A No, sir.
Q Isn't it true that he was convicted in Federal District Court?"

RSMo 1978, as amended; *see, e.g., State v. Payne,* 600 S.W.2d 94 (Mo.App.1980). Plaintiff then concludes this principle can be extended to impeach the credibility of defendant Londoff by questioning one of its employees, defendant Whitney, about the conviction of another employee, Boumis. Plaintiff reaches his conclusion from his premise by a free leap which is neither supported by law or logic, and, therefore, has no merit.

■■■ However, as a general principle of law taken in the abstract, plaintiff's second attack is correct. Members of a jury are presumed to have understood and heeded a judge's admonition or ruling. *See, e.g., Stephens v. City of Eldorado Springs,* 190 S.W. 1004, 1005 (Mo.App. 1916). Other equally sound general principles, however, are more important here: each case must be decided on its own facts and a motion for a new trial enables the trial court to reflect upon and consider its actions taken during a rapidly moving trial.

The grant of a new trial here was an exercise of the trial court's discretion. *See, e.g., Dorrell v. Moore,* 504 S.W.2d 174, 177 (Mo.App.1973). Boumis was Londoff's used car sales manager at the time of the sale in question. Upon reflection, the court could find, sensibly and rationally, that the poison injected into the trial by the question about Boumis' conviction went right to a basic issue—whether a fraudulent representation was, in fact, made—and, from this, find this poison could only be cured by a new trial. *Id.* at 176–177. We defer to the trial court which "has more power to direct the course of justice in the trial of a cause than any tribunal that may have charge of the case after [it].... [The trial court] is far better able to judge whether the trial has been fair than is the court that reviews the record." *Benjamin v. Metropolitan Street Ry. Co.,* 245 Mo. 598, 151 S.W. 91, 97 (1912).

Although the issue of whether the trial court's admonition cured the prejudicial effect of the improper question may be decided as an isolated issue, it need not be. The effect on the jury must be taken in context with plaintiff's subsequent references to Boumis in closing argument. As noted, in the rebuttal half of his closing argument, plaintiff's counsel reminded the jury that "we don't have Bob Boumis, the used car sales manager ..., who was responsible for trade-ins, who was responsible for giving the final approval" and asked the rhetorical questions: "where is he [Bob Boumis] today?" The acute increase of prejudice worked by the additional references to Boumis can be demonstrated best by addressing plaintiff's attempted justification for these additional references.

Plaintiff's attempt to justify his reference to Boumis in his closing argument is three-fold. First, plaintiff notes that defendants did not object to plaintiff's references to Boumis in his closing argument and, therefore, plaintiff argues, defendants did not preserve this issue for review. This argument is misdirected and, thus, misses the mark.

■■ Here, again, there is a meaningful distinction between the denial of a new trial and the grant of a new trial. On appeal, when a party claims error because the trial court *denied* him a new trial, the party ordinarily must have made a proper and timely objection to the claimed error to preserve it for review; but, when, as here, a party claims error because the trial court *granted* the opposing party a new trial, the opposing party need not have made an objection to the error upon which the trial court granted a new trial. *Beer v. Martel,* 332 Mo. 53, 55 S.W.2d 482, 485 (1932); *Greenwell v. Huffman,* 506 S.W.2d 28, 31 (Mo.App.1974); *Raines v. Small,* 169 S.W.2d 102, 105 (Mo.App.1943).[3]

---

**3.** In *Beer v. Martel, supra,* our Supreme Court stated: L.C. 485

"A trial court 'has the right, in the proper exercise of its discretionary power, to grant a new trial on account of any erroneous ruling, whether excepted to or not.' (Citation omitted).

But where it is sought to convict the trial court of error in refusing to grant a new trial, appellate courts will not review the propriety of the court's action in refusing to grant the new trial, unless proper and timely objections were made to the matter complained of, and an exception

Plaintiff also contends that Boumis, as an employee of defendant Londoff, was more available to Londoff and, therefore, in closing argument, plaintiff's counsel could argue an adverse interest from Londoff's failure to call Boumis as a witness. Plaintiff's reading of the record is incorrect.

■■■ Whether a witness is to be considered equally available to opposing parties depends on several factors. *Leehy v. Supreme Exp. & Transfer Co.*, 646 S.W.2d 786 (Mo. banc 1983).[4] Prior to the *Leehy* case, our courts "suggest[ed] that the existence of an employer-employee relationship automatically makes the employee more available to the employer." (Citations omitted) *Id.* at 790, n. 4. *Leehy* indicates the inflexibility of this rule is incorrect and that, even if an employer-employee relationship exists, the employee is not necessarily more available to the employer. *Id.* at 790–791. In the instant case, however, plaintiff did not even show Boumis was an employee of defendant Londoff at the time of trial. On the contrary, through defendant Whitney, who plaintiff called as a witness, plaintiff showed Boumis was no longer Londoff's employee. Thus, even under the cases which preceded the *Leehy* case, plaintiff's claim that Boumis was not equally available to him would be contradicted by plaintiff's own evidences, and, under the teaching of the *Leehy* case and its interpretation of the cases which preceded it, this contradiction would be even stronger.

■■ Plaintiff also argues his references to Boumis were not improper because they were made in retaliation to remarks made by defense counsel in his closing argument. In his closing argument, defense counsel

commented on the fact that plaintiff did not call as witnesses two mechanics, who, plaintiff apparently testified, worked with him and who had to put fluid in the car's transmission, which later "burnt up." [5] In rebuttal, as noted, plaintiff's counsel stated "we don't have Bob Boumis ..." as a witness and asked "where is he today." Within its discretion, the trial court could have found this rebuttal was not proper retaliation.

■ Although counsel is given some latitude in his argument in rebuttal, he must still "confine his remarks to a reasonable reply." *Brunskill v. Farabi*, 181 S.W.2d 549, 558 (Mo.App.1944). To be proper, a remark made in rebuttal must bear a direct relation to the subject of the preceding argument. *See Dodd v. M.K.T. Ry. Co.*, 353 Mo. 799, 184 S.W.2d 454, 458 (1945) and *Kelley v. Hudson*, 407 S.W.2d 553, 557 (Mo.App.1966). The reference of plaintiff's counsel to the absence of Boumis is not a direct response to the absence of the mechanics plaintiff worked with. The mechanics' absence as an issue is totally different than Boumis' absence. Proper retaliation would permit plaintiff to confine his responses to the mechanics' absence; i.e., they were equally available to defendants, their absence is irrelevant to the basic issue and raised merely to misdirect the jury's focus, and the like. With the record clearly implying that plaintiff's counsel knew Boumis had been convicted of a crime, the trial court logically could conclude plaintiff's references to Boumis were not only rhetorical but intentionally inflammatory.

■■ Admittedly, the trial court could have considered plaintiff's response as an argument made in the heat of trial and, as

saved to the alleged erroneous ruling at the time it was made." (Citations omitted)

4. The factors are:

"(1) 'one party's superior means of knowledge of the existence and identity of the witness'; (2) 'the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case'; and (3) 'the relationship borne by the witness to a particular

party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation and make it natural that he would be expected to testify in favor of the one party against the other.'" *Leehy v. Supreme Express & Transfer Co., supra* at 790.

5. Defendant's alleged fraud was, among other things, a representation that the car was in "good shape" when defendants allegedly knew the transmission was not in "good shape."

such, the court could have broadened the limits of permissible retaliation. Since no objections were made, the court could have disregarded the issue of proper adverse inference and could have concluded that defense counsel, in effect, was arguing for an adverse inference from plaintiff's failure to call witnesses who, plaintiff's testimony indicated, had some knowledge about the alleged defective transmission, and plaintiff, in effect, was responding in kind, asking for an adverse inference from defendant's failure to call Boumis, who was the used car sales manager at the time of the sale in issue. The trial court, however, did not chose to do so. The propriety and extent of a rebuttal argument rests within the discretion of the trial court. *Brunskill v. Farabi, supra* at 558. The trial court's choice here was not an abuse of discretion.

Plaintiff's attack on the trial court's third ground for granting a new trial, however, is correct. There was no showing made that any juror read or was even aware of the media reports of Boumis' sentencing and, thus, there is no basis to conclude that any juror was influenced by these reports in reaching his or her verdict. The third ground cannot lend any support to the grant of a new trial.

 However, "[t]he fact that the trial court's ruling might not have been proper on each and every assigned ground should not render the order ineffectual and deny the defendant[s] a new trial, .... It is elemental in our jurisprudence that a single ground of error, if prejudicial, is sufficient to warrant granting a new trial." *State ex rel. State Highway Commission v. Klipsch,* 414 S.W.2d 783, 786 (Mo.1967). The purpose of filing a motion for a new trial is to give the trial court an opportunity to reflect upon its actions made during a rapidly moving trial. Here, the trial court reflected upon the reference during trial to Boumis' conviction and the references to Boumis again during closing argument. In effect, the court found the first reference alone, or, together with the second reference, denied defendants a fair trial.

 The question before us is not whether we would have granted a new trial. "Rather we must determine whether the trial judge, who presided over the trial and is best able to know from observation the probable effect of the remark[s] complained of, has so clearly abused his discretion as to cause us to interfere with his action in granting the new trial." *Higgins v. Gosney,* 435 S.W.2d 653, 661–662 (Mo. 1968, as modified on Court's Own Motion, 1969). We attempt to make this determination as a distant reader of a cold record. But the trial judge sits as an intimate observer of a heated trial. He hears and sees what is said and done, with the sharp edges of words and actions not dulled by distance or time; thus, he is able to evaluate accurately the impact and influence of the words and actions in question, an impact and influence that is only dimly reflected and never completely captured by the cold record. From our reading of the record, we find no abuse of discretion in the trial court's evaluation of the effect of plaintiff's references to Boumis. *E.g., McCandless v. Manzella,* 369 S.W.2d 188 (Mo.1963).

In Count III, the alleged violation of our Merchandising Practice Act, plaintiff sought attorney's fees. Since the question of attorney's fees may arise again on retrial, we address that issue now. Section 407.025 RSMo 1978 of the Act does provide that the trial court may award attorney's fees to the prevailing party. The present record, however, does not show whether the cause was submitted to the jury on common law fraud or violation of the Act. However, in their briefs, both parties state, without reference to the record, that the cause was submitted to the jury on common law fraud.

 Ordinarily, attorney's fees are recoverable only when provided for by contract or statute, or, in those rare occasions in an equity action, when the trial court finds its necessary to award the fees in order to balance the benefits. *Duncan v. Townsend,* 325 S.W.2d 67, 71 (Mo.App. 1954). Thus, on remand, the award of attorney's fees will depend upon the cause of

action plaintiff chooses to submit to the jury.

Judgment for a new trial affirmed. Cause remanded.

SIMON, P.J., and STEPHAN, J., concur.