CLIFFORD ROBBINS, Respondent, v. BROWN-STRAUSS CORPORATION, Appellant, No. 43141—257 S. W. (2d) 643.

Division One, May 11, 1953.

1158

*Lyman Field* and *Rogers, Field & Gentry* for appellant.

*Trusty, Pugh & Green* by *Guy W. Green, Jr.,* for respondent.

VAN OSDOL, C.—This is an action for $25,000 damages for personal injuries sustained in a motor-vehicular collision at the intersection of Sixteenth Street and Prospect Avenue in Kansas City. The collision was between an automobile belonging to the police department of Kansas City, which police car was being driven westwardly on Sixteenth Street, and a Chevrolet "pickup" truck owned by defendant, Brown-Strauss Corporation, driven southwardly on Prospect Avenue by defendant's employee. The jury returned a verdict for

defendant; but the trial court sustained plaintiff's motion for a new trial, and defendant has appealed.

The appeal requires our review of the trial court's discretionary action in granting [644] a new trial on the specified grounds of prejudicial argument of counsel, and of failure of a venireman to state facts, on *voir dire,* which would have disclosed the possibility of a prejudice.

In order to understand the application of the grounds specified by the trial court as prompting its action in granting the new trial, it seems necessary to outline the issues as pleaded and submitted, to state the effect of some of the evidence, to quote some of the questions and answers on *voir dire,* and to particularly examine some of the argument of counsel.

Plaintiff, a police officer of Kansas City, alleged in his petition that he was riding in a motor vehicle belonging to the police department which vehicle was being operated westwardly on Sixteenth Street; that defendant's truck was being operated southwardly on Prospect Avenue; and that the vehicles came into collision at the intersection. Causal negligence of defendant was submitted specifically in failing to keep a vigilant lookout ahead and laterally, in failing to yield the intersection as required by an ordinance of Kansas City, and in moving at dangerous speed.

It was shown that the police car in which plaintiff was riding was being driven by another police officer, one Hollenbeck. We infer from the abbreviated transcript that evidence was introduced tending to show that the police car approached the intersection, stopped at a stop sign on the north side of Sixteenth Street near the northeast corner of the intersection, and then proceeded into the intersection at a time when defendant's vehicle was some distance to the northward; and that defendant's vehicle, moving southwardly, failed to yield the right of way and came into contact with the police car when it had moved almost across the intersection. There was also evidence tending to show that, as defendant's vehicle was proceeding southwardly on Prospect, a "through" street, the police car, driven as stated by officer Hollenbeck, did not stop at the stop sign, but "accelerated and shot out" across Prospect into the pathway of defendant's truck.

No issue of plaintiff's negligence in contributing to his injury was submitted to the jury, and it seems there was no showing of a relation between plaintiff and the officer Hollenbeck with reference to the control of the police car whereby the conduct of Hollenbeck in operating the car was chargeable or imputable to plaintiff. The trial court, in submitting each of the several specific issues of defendant's negligence to the jury, further instructed the jury to the effect that, "if you so find and further find from the evidence that such negligence of defendant, either solely caused said collision, or directly concurred or directly combined with any act, omission, whether negligent or not, of

the operator of the police car in directly causing said collision and injury to the plaintiff, then it would be your duty to find a verdict in favor of the plaintiff and against the defendant.''

As stated, plaintiff is a policeman, as is Hollenbeck who was driving the police car. Another police officer had investigated the collision, and we infer that the last mentioned officer was a witness for plaintiff.

On the *voir dire,* Mr. Green, counsel for plaintiff, was interrogating the members of the panel. He was asking the veniremen about their experiences with the police. Mr. Green said, ''Now, as you probably have gathered by now, the witnesses here, the plaintiff, the driver of the automobile, and the investigating officer are all policemen. Have any of you had any experience with policemen that would tend to prejudice you against them?'' Mr. Green remarked that all people have some prejudices and that everybody is entitled to them, but ''we shouldn't bring them into the jury room with us; so if any of you have any reason now to feel that you have had some experiences that have made you feel sour against policemen and it would take more evidence to have you return a verdict for them than it would for an average person, or that you would start out with a prejudice against them, it is only fair that you speak up and tell us. Does anybody have any such feeling? - - - Do you have any reason for any feeling either for or against them? Maybe some people would start out with prejudice in favor of them. That wouldn't be fair to the defendant. If you would start out with prejudice against them, **[645]** that wouldn't be fair to the plaintiff. So if you have any such feelings, speak up.'' No venireman made reply, and Mr. Green resumed by making inquiry relating to possible claims for damages by or against the individual veniremen. Thereupon, Earl S. Granby, one of the panel, related the fact of a minor claim another had made against him, as well as two claims he had asserted against others, none of which had culminated in litigation. Mr. Green then asked if any member of the panel was employed as a claim agent or investigator, and Mr. Granby said that he sold insurance and ''once in a while we do settle our own claims.'' Presently defendant's counsel, Mr. Field, interrogated the panel. Mr. Field asked if any of the panel had any connection with the Kansas City police department.

''Mr. Field: - - - I mean by way of employment. I suppose all of us have had some kind of connection with the department at one time or another.

''Earl S. Granby: On election days I used to be a special officer, but I haven't in the last ten years.

''Mr. Field: How often have you?

''Mr. Granby: Three different times.

''Mr. Field: Were you working under the election commissioners or under the department?

"Mr. Granby: Under the election commissioners, I suppose. I had to go to the headquarters to get my credentials.

"Mr. Field: Did you form any close attachments to officers on the police department as the result of that?

"Mr. Granby: No.

"Mr. Field: Has anybody else on the jury panel ever had any connection with the police department?

"Mr. Granby: I had a nephew-in-law on the force.

"Mr. Field: What is his name?

"Mr. Granby: Lyle Woodson.

"Mr. Field: What does he do?

"Mr. Granby: Motorcycle.

"Mr. Field: Are you fairly close to Lyle Woodson, closer ordinarily than one would be to a niece's husband?

"Mr. Granby: He and I enjoy outdoor sports together quite a bit.

"Mr. Field: You are pretty good friends as well as being related by marriage?

"Mr. Granby: Pretty well. - - -"

By affidavit supporting plaintiff's motion for a new trial, the facts, in no way disputed, were shown that the venireman Granby had been arrested by a policeman for speeding the evening preceding the trial, but, because of his required attendance as a juror the next morning, the charge was postponed to a subsequent date on which he entered a plea of guilty and was fined.

In his argument to the jury, Mr. Green, counsel for plaintiff, spoke of the evidence tending to show that the police car had stopped at the stop sign and had sufficient time thereafter to pass into and command the right of way over and across the intersection. He then asked, "Who anticipates that someone is going to violate the law? Could these *two patrolmen* anticipate that when that car was down there by the alley he (defendant's employee) was going to proceed up the street at the same speed, when the ordinance required him to yield them the right-of-way under such circumstances?"

In turn, defendant's counsel, Mr. Field, in his argument, said,

"Mr. Green did give you a number of very interesting glittering generalizations. - - - He said the man (defendant's employee) was going much, much too fast and that he wasn't paying any attention to where he was going; and he asks, 'who anticipates that someone is going to violate the law,' - - -.

"Fine lawyer that he is and resourceful lawyer that he is, if he can convince this jury that somebody (defendant's employee) going down a through street at a rate of speed that everybody who testified as to rate of speed said was below the lawful limit, 35 miles an hour, - - - who did put on his brakes when he saw *the policemen running the stop sign*, - - - if he can [646] con-

vince this jury that *the police officers were not negligent* and, that the truck driver was, then he is a very skillful lawyer.

"Just think of this as a glittering generalization: 'Who anticipates that someone is going to violate the law?' Did he expect the driver on a through street to anticipate that Officer Hollenbeck *and Officer Robbins riding with him, would not stop* at the stop sign? The shoe is on the other foot there. Maybe it pinches a little. I agree with him on this, that anybody driving down a through street is entitled to assume the people will stop at stop signs, whether they be police or anybody else." Later in his argument, Mr. Field continued,

"First, let us take the testimony of Robbins and Hollenbeck. Now, even on their own testimony which is based on the proposition that *they* did stop at the stop sign, even on that testimony *they* were still required to operate under the ordinance, even if *they* stopped at the stop sign, because this was a through street and they were entering. - - -

"So I tell you ladies and gentlemen under the ordinances *that these police officers were held to be operating under*, just like any other citizen, after *they* stopped at the stop sign, if *they* did, and considering only their own testimony, when *they* reached that curbing if that truck constituted an immediate hazard *they* had to yield the right-of-way. I think their testimony should convince you that *under all law* and logic it was an immediate hazard and *they should have yielded the right-of-way* to this man, driver of the truck, and that is assuming that *they* stopped as they said they did in their testimony." (Our emphasis throughout.)

And in his closing argument plaintiff's counsel, Mr. Green, replied to the quoted argument of defendant's counsel, as follows,

"The third line of defense is something that hasn't any bearing on the lawsuit whatsoever. He has told you if they were negligent, that if Hollenbeck and Robbins were negligent, then they can't recover. Well, look through the instructions - - - is there a word in here about the plaintiff being negligent? Does the Judge tell you you can find anything that makes the plaintiff negligent in this case? Anywhere in these instructions there is not a word or anything submitted to you that the plaintiff did that could permit him to be deprived of a recovery. That is so much hog wash; that is trying to get your mind off the main issue.

"He talks about what Mr. Hollenbeck did, but here in this instruction the Court tells you if this man (defendant's employee driving the truck) was negligent, if the driver was negligent, then the plaintiff must be brought in a verdict, so that disposes of all that trying to put the plaintiff out, because anything he says about the driver might apply to the plaintiff, but the Judge

doesn't tell you that. There isn't a word of that in these instructions, and you are sworn to follow the instructions. Why, such a resourceful lawyer as Mr. Field cannot make you follow what he says is the law and turn down what the Judge tells you is the law.''

It is noted that it was plaintiff's counsel who first referred to ''these two patrolmen'' although we doubt that this reference opened the way for the argument of defendant's counsel quoted supra. It is to be noted that defendant's counsel in his argument time and again referred to the two police officers, Hollenbeck and plaintiff, in such a manner as to convey to the jury that ''they'' both were legally responsible for the operation and the management of the police car as it approached and proceeded out into the intersection. It is further noted that plaintiff's counsel, Mr. Green, did not object to this line of argument on the part of Mr. Field and that Mr. Green replied to Mr. Field's argument by saying that it was ''so much hogwash'' and further that ''such [647] a resourceful lawyer as Mr. Field cannot make you follow what he says is the law and turn down what the Judge tells you is the law.'' Notwithstanding that no objections were made to Mr. Field's argument, and notwithstanding that Mr. Green replied to such argument, the trial court was of the opinion the argument was prejudicial as evidenced by Ground No. 8 specified in the order granting the new trial, as follows, ''Defendant's counsel committed prejudicial error in arguing inflammatory and improper matters to the jury and in arguing to the jury that in effect the plaintiff was chargeable with any negligence of the driver of the police car and in arguing that 'they', meaning the plaintiff and driver of the police car, were both guilty of negligence as submitted in the instructions against the driver of the police car alone and in misquoting the law and in misguiding the jury.''

And the trial court was of the further opinion, as evidenced by the specified Ground No. 11 (and specified but cumulative Grounds Nos. 12 and 13), that ''Juror Earl S. Granby, who was foreman of the jury, had been arrested on the evening of December 3 and before the trial on the morning of December 4th and while said juror served, said juror had a speeding charge pending against him as the result of having been arrested the evening before and by reason thereof was prejudiced against police and said juror failed to reveal the fact of his arrest and unpleasant experience with the police department - - - on the night before said trial started and said Earl S. Granby was an improper juror and prejudiced against police including this plaintiff - - -.''

With respect to both of the instances stated in Nos. 8 and 11 (and in Nos. 12 and 13), grounds specified by the trial court in granting the new trial, the action of the trial court was discretionary, subject

to an appellate court's review as to the abuse of discretion. We must notice that, in this case, the trial court *sustained* plaintiff's motion for a new trial on the stated Grounds Nos. 8 and 11 quoted supra. The instant case is to be at once differentiated from those cases cited by defendant-appellant wherein motions for a new trial were overruled.

It is our duty to determine if the trial court abused its discretion in sustaining plaintiff's motion for a new trial, and we now pass to a consideration of the Ground No. 11, the subject of which was first in chronological order with reference to the trial of the cause.

It has been written that the qualification of a juror should be determined before the trial begins; that such qualification is a matter of exception; and that the parties must develop such information and take such exceptions, as they desire to preserve for appellate review, before the jury is sworn. Massman v. Kansas City Public Service Co., Mo. Sup., 119 S.W. 2d 833, and cases therein cited; Section 494.050 RSMo 1949, V.A.M.S. An exception is made to this rule so that where it is shown that matters which might establish prejudice or work a disqualification were actually gone into on the *voir dire,* and false answers were given, or deception otherwise practiced, the court will be permitted to consider the question on the motion for a new trial, either upon oral testimony taken at a hearing on the motion, or by affidavits. Such a situation is closely akin to that when a new trial is sought for newly discovered evidence. The "complaining party is not to be left without a remedy for the want of a prior objection and exception, when the disqualification of the juror was one which he by due diligence could not have learned sooner." Harding v. Fidelity & Casualty Co. of New York, Mo. App., 27 S.W. 2d 778; Massman v. Kansas City Public Service Co., supra.

As stated, a trial court's consideration of such a question on motion for a new trial is in the exercise of a discretionary power. Schierloh v. Brashear Freight Lines, Mo. Sup., 148 S.W. 2d 747; Reich v. Thompson, 346 Mo. 577, 142 S.W. 2d 486; Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S.W. 2d 695. See and contrast O'Brien v. Vandalia Bus Lines, 351 Mo. 500, 173 S.W. 2d 76, wherein it was held the trial court did not abuse its discretion in **[648]** overruling defendant's motion for a new trial; Massman v. Kansas City Public Service Co., supra. Since he is present and presiding over the trial court proceedings including the pretrial *voir dire* and the aftertrial argument of counsel as well as the trial proper, a trial judge is in a better position to judge the prejudicial effect of untoward trial courtroom events than are we. So it is often said that appellate courts are more liberal in upholding a trial court's action in sustaining a motion for a new trial than in denying it.

1166

In our case, the venireman Granby, who became a trial juror and was later selected as foreman of the jury, did not have questions propounded to him which directly called for his disclosure of the fact that he had been arrested the previous evening by a policeman. In a way, counsel for plaintiff left it to the veniremen to decide whether or not they had had an experience such as would tend to prejudice them against policemen. Nevertheless, it would seem the questions asked by counsel were such as would ordinarily prompt an answer by a venireman frankly disclosing the fact of a recent arrest. The venireman Granby was frank in his answers to other questions asked by counsel relating to claims and collections of claims, and he was quite ready with his disclosure of his special service as a police officer on election days several years ago. He also readily related his friendly association with his niece's husband, a policeman, in outdoor sports. These answers of venireman Granby could be interpreted as intentionally conveying the thought that he not only was in no way prejudiced against policemen, but that, in fact, he had a very kindly feeling toward them, having himself served specially as a policeman, and having a good friend, a policeman, with whom he often enjoyed outdoor sports. This interpretation or inference of Granby's intention from the cold record could be reasonably considered to have been a subtle concealment of a resentment or prejudice against policemen (including plaintiff) when the fact of his failure to disclose his recent arrest is also considered. And we again remind ourselves that the trial judge was present and presiding, heard the voir dire examination in its entirety, and observed the attitude and demeanor of the veniremen including Granby. Taking into account the answers of Granby (and his failure to answer) and the subsequent showing of his arrest the preceding day, we cannot say the trial court abused its discretion in awarding a new trial on the specified Ground No. 11. We think we should not interfere.

■■■ While the trial court's sustention of the motion for a new trial on Ground No. 11 is upheld as being within the trial court's sound discretion, and it is really unnecessary for us to examine the trial court's action on the specified Ground No. 8, we further say that the argument of defendant's counsel was such as would tend to lead the jury to erroneously believe that plaintiff was chargeable with the conduct of Hollenbeck in the operation of the police car. The trial judge was in an excellent position to gauge the effect of the improper and objectionable argument, and, if he deemed the overall effect to have been so prejudicial as to deprive plaintiff of a fair and impartial trial as he undoubtedly did, he had the duty to cause the entry of the new trial order, although no objection had been made to such argument. Beer v. Martel, 332 Mo. 53, 55 S.W. 2d 482; and see Kronmueller v. Wipperman, Mo. App., 129 S.W. 2d 43 (wherein the argument which the trial court deemed prejudicial

was made to the judge but in the presence of the jury during the progress of the trial proper). See also Amsinger v. Najim, 335 Mo. 528, 73 S.W. 2d 214, wherein the trial court overruled the motion for a new trial and the judgment was reversed by this court because the argument was wholly without the issues, misleading and prejudicial. The field of argument to the jury is a broad one, but the law does not contemplate that counsel in argument may go beyond the issues and urge prejudicial matters, or urge a theory of claim or defense which the evidence does not justify or which conflicts with the trial court's instructions submitting the issues of a case. Beer v. Martel, supra; Amsinger v. Najim, supra; Schrader v. Kessler, Mo. [649] Sup., 178 S.W. 2d 355; Phillips v. Vrooman, 361 Mo. 1098, 238 S.W. 2d 355.

The order granting the new trial should be affirmed.

It is so ordered. *Lozier* and *Coil, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.