Fred McCANDLESS, Appellant,

v.

Thomas MANZELLA, d/b/a American
Cab Company, Respondent.

No. 49332.

Supreme Court of Missouri,

Division No. 2.

July 8, 1963.

Albert J. Yonke, Kansas City, for appellant.

John C. Russell, Donald E. Raymond, Kansas City, for respondent; Russell, Raymond & Brennan, Kansas City, of counsel.

BOHLING, Commissioner.

Fred McCandless had a verdict and judgment for $25,000.00 for personal injuries against Thomas Manzella, doing business as the American Cab Company. Defendant was granted a new trial on eight of the twenty-two grounds assigned in his motion therefor, six alleging prejudicial conduct by plaintiff's counsel and two alleging error in instructions. Plaintiff has appealed.

The trial of this case started October 25, 1961, and involved injuries received about noon January 9, 1956. The evidence favorable to plaintiff was to the following effect: Plaintiff, 58 years old in 1961, was working in 1956 as a bartender from 4:00 p. m. until 1:30 a. m. On the morning of January 9, 1956, he was in the One-Eleven Bar in Kansas City, Missouri, for thirty to forty minutes, had a couple of bottles of beer, and had a cab ordered to take him to the Canton Cafe, where he intended to eat. An "American Cab" came, with a lady driving. Plaintiff got in the front seat, and was taken to the Canton Cafe. The cab stopped close to the curb. Plaintiff opened the door, which opened to the front, put his right foot on the curb, reached in his pocket, and paid the cab driver sixty-five cents. The motor was running. The cab had a manual shift. The cab driver started counting the money, using both hands. Plaintiff continued getting out of the cab and, while he was so doing, the cab went forward about two or two and a half feet and the back of the front seat hit him and threw him out onto the sidewalk. He landed with full force on his right hip. He was severely injured, sustaining a fracture of the right femur, which caused great pain and would necessitate time-consuming and expensive medical services.

Defendant's evidence, if believed, sustained the following findings. Plaintiff had been drinking and was unsteady on his feet. He rode in the rear seat of the taxicab. The cab was stopped about six or seven inches from the curb in front of the Canton Cafe. The street is level. Plaintiff backed out of the cab from the right rear door, turned as if he were going toward the restaurant, slipped or tripped and fell onto the cement sidewalk. The motor of the taxicab was turned off when it stopped to let plaintiff out. The taxicab did not move. There was a strong odor of liquor on plaintiff's breath, and he was under the influence of alcohol.

Police officer George M. Vernon testified that about five years ago as he was leaving the Canton Cafe at the lunch hour he noticed a man backing out of the rear door of a taxicab operated by a lady driver. The man turned as if going to the restaurant, lost his balance and fell onto the cement sidewalk. Witness tried but was unable to catch and keep the man from striking the sidewalk. Witness had the opinion the man was under the influence of alcohol. Officers are supposed to make a report when a person is injured. Witness did not make a report, did not know whether the person was injured. He gave the information to the district officer upon that officer's arrival, turned the matter over to him and went ahead with his own business.

Officer Joseph F. Smith testified in rebuttal that he was in charge of the records of the Kansas City Police Department; that he found no report in his records of an accident involving plaintiff and an American Cab on January 9, 1956; that it was customary for officers to make a report of a casualty they see while on duty but he did not know of any rule that required such a report in every instance.

The rulings of misconduct on the part of plaintiff's counsel involved the following occurrences of record.

■ Phil Evola, a witness for defendant, owned the One-Eleven Club on January 9, 1956. His testimony as to plaintiff's condition on said morning was damaging to plaintiff. The following occurred on cross-examination by Mr. Yonke:

"Q What business are you in? A I am an employee of the Paramount Music

Shop, Manager. Q Is that some sort of a juke box outfit? A No, sir. Q Does Manzella have anything to do with it? A No, sir. Q Who does? A Nick Civella. Q Did Nick Civella have any interest in your business? A No. Q *Does Nick Civella have any interest in the American Cab?* A *No, sir.*

"MR. RUSSELL: We object to this type of question.

"THE COURT: Overruled.

"MR. YONKE: *I wonder if we have the Mafia running all through this case.*

"MR. RUSSELL: I object and ask the jury to disregard the remark of counsel pertaining to the Mafia.

"THE COURT: If the jury heard any such remark they will disregard it." (Emphasis added.)

Defendant's argument was defensive to avoid any prejudice created by the remark of plaintiff's counsel. He stated:

"I come up here and I am defending a man named Manzella. He is of Italian descent. They tried to get the Mafia into the case because the man is an Italian and he runs a cab company. All these insinuations add up to nothing more than dirty pool. They didn't have a lawsuit to begin with so they just come in and attempt to muddy up the waters. That is what they said, that they intimated into the case."

Then in closing, plaintiff's counsel stated:

"Who is muddying the waters? It sounds like Mr. Manzella. Counsel says the police didn't report it because they don't report drunks. It is a darn sad situation when the Police Department of Kansas City, Missouri, doesn't make a report on a drunk. Do you mean you believe that? No report was made because Mr. John Manzella and Mr. Willie Manzella were around there and took care of these things. They were moving around in there, don't you see? That is the way they operate that cab company.

"MR. RUSSELL: I object to the insinuation as highly improper.

"THE COURT: Sustained.

"MR. YONKE: Why didn't you bring them in?

"MR. RUSSELL: I am not on trial in this lawsuit.

"MR. YONKE: (continuing) Let's not talk about who is muddying the waters with their Evolas and their police reports and their people running around at the scene, not getting witnesses names except the ones they want to produce."

 Trial courts are vested with discretionary authority over questions of fact and matters affecting the determination of fact issues in ruling on motions for new trial. De Maire v. Thompson, 359 Mo. 457, 222 S.W.2d 93, 97 [5]. Appellate courts are liberal in deferring to a trial court's action on fact issues because of that court's better knowledge of the trial atmosphere and incidents, and their effect on the jury. De Maire case, supra [6]; Castorina v. Herrmann, 340 Mo. 1026, 104 S.W.2d 297, 300 [11]; McFarland v. Wildhaber, Mo., 334 S.W.2d 1, 4 [9]. The appellant has the burden of affirmatively establishing reversible error. The respondent does not have to establish the correctness of the trial court's ruling. Hardy v. McNary, Mo., 351 S.W.2d 17, 20 [2, 3], and cases cited. It is stated in Robbins v. Brown-Strauss Corp., 363 Mo. 1157, 257 S.W.2d 643, 648: "The trial judge was in an excellent position to gauge the effect of the improper and objectionable argument, and, if he deemed the overall effect to have been so prejudicial as to deprive plaintiff of a fair and impartial trial as he undoubtedly did, he had the duty to cause the entry of the new trial order, although no objection had been made to such argument." See also Stroh v. Johns, Mo., 264 S.W.2d 304, 307 [8–10], quoting and applying Beer v. Martel, 332 Mo. 53, 55 S.W. 2d 482, 485 [13, 14]. However, where the assignment is that the court erred in refus-

ing to grant a new trial, the claimed trial error must ordinarily be marked by proper and timely objection. The Stroh case, supra.

■ Plaintiff's pleaded and submitted theory of his case was that defendant, Thomas Manzella, owned, operated and did business as the American Cab Company. His inquiry about Nick Civella having "any interest in the American Cab" did not tend to identify or reflect on the credibility of the witness Phil Evola, as plaintiff appears to argue, citing Wilcox v. Coons, 362 Mo. 381, 241 S.W.2d 907, 915 [17, 18]. The inquiry appears to have been made to reflect on the credibility and integrity of defendant. It conflicted with plaintiff's said theory of his case, and plaintiff should not have been permitted to attempt to prove that which conflicted with the pleaded theory of his case on the fact involved. Swan v. Stuart, Mo.App., 353 S.W.2d 805 [2, 3]; E. C. Robinson Lumber Co. v. Ladman, Mo.App., 255 S.W.2d 72, 78 [7].

The definition of the "Mafia" in Webster's Third New International Dictionary reads: "1: a secret society of political terrorists * * * 2: a secret organization composed chiefly of criminal elements and usu. held to control racketeering, peddling of narcotics, gambling, and other illicit activities throughout the world * * *."

■ The trial court, upon reflection, could find the remark of plaintiff's counsel (viz.: "I wonder if we have the Mafia running all through this case") immediately following the overruling of defendant's objection disclosed the real purpose of plaintiff's inquiry as to Nick Civella's interest in the American Cab, and that counsel sought to connect defendant with Nick Civella and the Mafia. From the court's statement for the jury to disregard the remark if they heard it, plaintiff argues it was said in a low voice and the jury probably did not hear it. The transcript shows these proceedings were within the hearing and presence of the jury, and elsewhere in the transcript proceedings out of the presence and hearing or in the presence but out of the hearing of the jury are fully noted. Assignment No. 17 in defendant's motion and here under discussion was sustained by the trial court, including the allegation therein that said misconduct occurred within the presence and hearing of the jury. Appellate courts accept the record certified to them. Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644 [4].

■ The court also sustained assignment 18 of defendant's motion, which assignment related to the argument (quoted supra) on behalf of plaintiff. Plaintiff had the right to reply to defendant's argument, but was not authorized to make any reckless assertion he pleased. The extent of a reply rests largely within the discretion of the trial court. Brunskill v. Farabi, Mo.App., 181 S.W.2d 549, 558 [19]. "The field of argument to the jury is a broad one, but the law does not contemplate that counsel in argument may go beyond the issues and urge prejudicial matters * * *." Robbins v. Brown-Strauss Corp., supra, 257 S.W.2d 648 [5]. See Critcher v. Rudy Fick, Inc., Mo., 315 S.W.2d 421, 427 [4]. The trial court could construe plaintiff's argument as accusing defendant of procuring the police to violate their duty to report occurrences taking place while on duty; of taking care of and suppressing these things, and of operating his taxicab business in a sinister manner. In sustaining assignment 18 the trial court found, after deliberation, that this argument was made to further and enlarge the prejudicial effect of the prior reference to Nick Civella and the Mafia occurring during the reception of the evidence. There was no affirmative substantial evidence of record to sustain said argument, and the argument was improper. Kelsey v. Kelsey, Mo.App., 329 S.W.2d 272, 274 [7].

In view of the trial court's superior knowledge of the local situation and position to observe the effect upon the jury of occurrences during the course of the trial, we are not inclined upon the whole of the

record before us to overturn its findings and conclusions on the foregoing issues. Faught v. Washam, Mo., 329 S.W.2d 588, 604 [30]; Myers v. Moffett, Mo., 312 S.W. 2d 59, 65 [3]; Baker v. Fortney, Mo.App., 299 S.W.2d 563, 567, and cases cited.

We will not extend this opinion to develop other issues presented by plaintiff. Some should not occur upon a retrial; and no doubt plaintiff will re-examine the instructions in the light of defendant's criticisms and make such changes therein as he may consider proper.

The order granting a new trial is affirmed and the cause is remanded.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All of the Judges concur.