**Arlene GREENWELL, Respondent-Appellant,**

v.

**Marguerite HUFFMAN, Appellant-Respondent.**

**Nos. KCD 26373, KCD 26377.**

Missouri Court of Appeals, Kansas City District.

Feb. 4, 1974.

---

Myron S. Silverman, Kansas City, for respondent-appellant; Gage, Tucker, Hodges, Kreamer, Kelly & Varner, Kansas City, of counsel.

Walter F. Moudy and Russell D. Jacobson, Kansas City, for appellant-respondent; Morris, Foust, Moudy & Beckett, Kansas City, of counsel.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

PRITCHARD, Presiding Judge.

Upon her claim for $10,000.00 damages alleged to have resulted from defendant's negligent failure to keep a lookout and the striking of the door of plaintiff's parked automobile by defendant's automobile, the verdict of the jury was for defendant. Thereafter, the trial court sustained plaintiff's motion for new trial upon the stated basis: " 'Plaintiff's motion for a new trial is sustained for the reason stated in paragraph 5 of her motion.' " Paragraph 5 of the motion to set aside the verdict and grant a new trial sets forth this ground: " '5. Because defendant's counsel used improper final argument in order to arouse prejudice, bias and resentment against the plaintiff.' " Plaintiff cross-appealed upon the proposition that a new trial should have been granted also upon the ground that it was error to have given an instruction upon plaintiff's contributory negligence of failure to keep a lookout, her claim being that there was no evidence to support it and any such failure was not the proximate cause of her injuries. In view of the disposition of this case upon the points presented by defendant's appeal, it will be unnecessary to reach the cross-appeal, nor will it be necessary to set forth any of the evidence except that relating to plaintiff's injuries, the testimony of her husband (which defendant claims is a sufficient basis for the argument), and the argument of counsel concerning the injuries.

Plaintiff testified that as a result of hitting the steering wheel she had pain across her chest. Her little toe, which had a corn removed from it three weeks before, hurt immediately and it began to swell later in the day, but later healed. Her neck and shoulders hurt, and were stiff and sore, "they were like—I felt like I had been hit with a ton of bricks." Her left arm was numb occasionally for two or three weeks. She had constant headaches which started within 15 minutes after the collision. She could not sleep at all that night. The following Monday she saw Dr. James, who took x-rays, recommended some therapy,

traction and heat. She started therapy, traction and later home exercises, which relieved it intermittently. She underwent about two weeks of therapy. The medical treatment costs were $205.00. Four or five weeks after the collision the pain was completely gone in her chest, and the swelling problem with the toe cleared up in five or six weeks, and the numbness in her arm healed in about two months. She still has some problems with headaches, three or four a month, but the continuous headaches after the collision lasted only two or three weeks. She rarely had headaches prior to the collision. The pain in her back, shoulders and neck, although improving for a period, has gotten progressively worse. The pain in her back is concentrated between her shoulder blades, moreso on cold, damp days. She has pain when she drives, and when she sits all day, the pain is unbearable. She has great difficulty in doing the housework—vacuuming, laundering and scrubbing. She has problems with lifting and bending movements. On vacation flights with her husband, who is a TWA employee entitled to airline passes, plaintiff is uncomfortable sitting in the narrow, confined seats for two hour flights.

From his examination of plaintiff done four days after the accident, Dr. Otis E. James, Jr., an orthopedic surgeon, thought that she had sustained injuries to the soft tissues and muscles of the back of the neck and the upper back, which caused a flareup of pre-existent arthritic changes in her neck. He recommended physical therapy and conservative treatment and saw her several times, after which he concluded that she had reached a plateau or a level of further improvement, and she was released. He thought she would have some permanent injury, primarily due to aggravating arthritis. He would expect some progression with advancing age. It was Dr. James' opinion that there was a direct relationship between the collision and the symptoms and his findings in his examination relating to the neck, upper back and left arm.

With respect to plaintiff's activities in the home, her husband testified: "Q. How can you tell if she is hurting in her back? What do you observe? A. Well, I mean, like— Q. Other than what she tells you? A. Well, if I go up and want to snuggle up, or put my arm around her, or play with her, she hollers, 'My neck hurts,' or 'My back hurts.' She is complaining, because—she wants me to do the vacuuming, because she can't. Q. She gets irritable? A. Oh, yes, and she gets snappy, jumps down my throat once in awhile. Q. What do you do for her? Do you do anything to help her back problems? A. I massage her back, make her lay down, I take over the heavy work from her. * * * Q What about the housework, does she have any difficulty doing housework? A. She can't do any—with the vacuum sweeping, I have to do all that. Q. You do that. What else do you do around the house? A. Well, if, like when she does the laundry, I will transfer the wet laundry for her over to the dryer. Sometimes I will take it out of the dryer because it may bother her to bend over. It's the lifting. If she stacks dishes to put them away in the cabinet, I will take them. She can't do, like the extension of the vacuum cleaner, she can't do overhead dusting, any overhead dusting." On cross-examination, plaintiff's husband further testified: "Q. Now, you say you can tell when your wife is having these problems because she gets crabby, particularly when you want to snuggle up— A. Anytime, almost anytime. That is one particular thing, when I touch her back or shoulders, she reminds me she hurts. Q. Had you ever had this problem with your wife before the accident? A. No. Q. The truth of the matter is, you said she constantly complained about anything before the accident? A. What do you mean by anything? Q. Any complaints, any ailments? A. Not complain, no. * * * Q. (By Mr. Moudy) Well, just describe to me, for the last ten years, has your wife generally been a noncomplainer, right? A. Right. She doesn't complain. Q.

But she has been under regular treatment for various ailments? A. Well, yes, but that doesn't mean she has to complain. Q. In connection with her treatment for those various ailments, would she ask you to vacuum floors? A. Not for those illnesses, no. Q. Scrub the woodwork? A. I would do that anyway, because I don't think that is a woman's job. Q. Wax floors? A. I have waxed the floors. Q. You have always done that, is that right? A. Yes. Q. Before and after the accident? A. Oh, I waxed them before, but not as much as since the accident, no."

The portion of defendant's argument which she contends was not an improper attempt to arouse prejudice, bias and resentment against plaintiff, but was a fair comment upon the evidence and the permissible inferences to be drawn therefrom is this:

> "* * * This instruction (indicating) says you are not to base your verdict upon sympathy. There is one I felt sorry for—he is not here today—I felt sorry for her husband. He says, 'I known my wife is having complaints. I know when she is having problems up here (indicating), because,' he said, 'she is oftentimes hard to get along with, she is grouchy whenever I start cuddling up to her, and wanting a little loving.' She complains about her back whenever she wants work done around the house, somebody to scrub the floors, she wants somebody to do the washing, wax the floors, vacuuming the floors. A man that is working full time down at TWA a man that works hard to take her on these various trips—
>
> "MR. COBURN: Excuse me. May we approach the bench?
>
> "THE COURT: Yes.
>
> (Off-the-record proceedings.)"

[redacted] Defendant first says that there were no objections made to her closing argument and the trial court therefore erred in sustaining plaintiff's motion for new trial based on paragraph 5 thereof. Plaintiff counters and says that though no specific objection (or ruling) appears in the record, it is inferable that the objection was made and ruled upon because defendant's argument was changed immediately after the off-the-record proceedings. It is unnecessary to speculate if an objection was made, and if so what it was, and what, if any, the trial court's ruling was. The matter is disposed of by the often cited and quoted case of Robbins v. Brown-Strauss Corp., 363 Mo. 1157, 257 S.W.2d 643, 648[4–6] (1953): "The trial judge was in an excellent position to gauge the effect of the improper and objectionable argument, and, if he deemed the overall effect to have been so prejudicial as to deprive plaintiff of a fair and impartial trial as he undoubtedly did, he had the duty to cause the entry of the new trial order, *although no objection had been made to such argument.*" (Italics added.) See also the there cited case of Beer v. Martel, 332 Mo. 53, 55 S.W.2d 482 (1932), where it was held that it was within the trial court's discretion to grant a new trial on account of improper argument where the matter was raised in a motion for new trial, even though there was no objection to the argument. But note, as a caveat, McCandless v. Manzella, 369 S.W.2d 188, 190[2–4] (Mo.1963), holding [citing Stroh v. Johns, 264 S.W.2d 304 (Mo.1954)], "However, where the assignment is that the court erred in refusing to grant a new trial, the claimed trial error must ordinarily be marked by proper and timely objection."

[redacted] Defendant next says that the plaintiff's motion for new trial was too general to preserve any error to the trial court or this court, and that the trial court's grant of a new trial did not specify the grounds therefor and is presumptively erroneous, and that the burden of supporting its order is on the plaintiff. These contentions may be disposed of because at the time of the

**32**

filing of the motion for new trial there were also filed suggestions in support thereof. Those suggestions more fully develop the assignment in paragraph 5 of the motion by calling attention to the argument concerning plaintiff and her relationship and conduct towards her husband in that "Such remarks can only be said to have been made in a calculated and reckless attempt to arouse hatred and prejudice against the plaintiff and were wholly unsupported by any evidence in the case." Cases were cited to the court in support of the assignment. There is no doubt that the court was aware of the portion of the argument of which plaintiff complained, and a liberal construction should be applied to the assignment. Stroh, supra, loc.cit. 264 S.W.2d 308; Moore v. Glasgow, 366 S.W.2d 475 (Mo.App.1963).

■ Lastly, defendant contends that her argument was not an attempt to arouse prejudice, bias and resentment against plaintiff but was a fair comment on the evidence and the permissible inference to be drawn therefrom. There is *no* evidence that the complaints of pain which plaintiff and her husband testified were made, were made by her for the purpose of getting her husband to do work in the household which she did not care to do. There was no evidence but that the attempted caresses of plaintiff by her husband caused her pain, and there was no evidence that those complaints of hurting and pain were made solely to avoid the caresses. The argument was wholly outside the issues and the evidence and obviously were done to arouse sympathy for the husband who was not a party to the action, and were thus in violation of the court's instruction on the subject of sympathy. The trial court was in a better position to judge the effect of the argument upon the jury; no abuse of discretion appears; and the order for new trial should not be disturbed. Robbins, supra.

The judgment is affirmed.

All concur.