Gary V. GIDDENS, Appellant,

v.

KANSAS CITY SOUTHERN RAILWAY COMPANY, Respondent.

No. WD 51568.

Missouri Court of Appeals, Western District.

Nov. 26, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 1997.

Application to Transfer Denied Feb. 25, 1997.

Patrick O'Brien, St. Louis, for appellant.

Harland Burkhead, Kansas City, for respondent.

HANNA, Presiding Judge.

Plaintiff, Garry V. Giddens, brought this cause of action, premised upon the Federal Employer's Liability Act, 45 U.S.C. § 51 et seq., for injuries he sustained on May 18, 1989, while working for the defendant as a maintenance-of-way foreman. He appeals from the Circuit Court's order granting defendant Kansas City Southern Railway Company's Motion for New Trial.

On May 17, 1989, the plaintiff was dispatched to check a railroad track for water damage due to heavy rains, which had washed away the roadbed. On May 18, 1989, he was again called to assess further damage along the right of way. On May 19, 1989, the plaintiff was instructed to take his crew to milepost 612 to repair the washout by building a box bridge structure under the rails to hold them up. He was told to use the crane and caboose chains to lift the rails while the box bridge was being built.

Upon arriving at milepost 612, the plaintiff was instructed to supervise a backhoe operator and to place the washed out mud and rock back into the washout. The plaintiff and the crew were then to use the locomotive crane to raise the tracks and place ties on top of the mud and rock to support the track.

While repairing the tracks, the plaintiff was under a raised rail assisting in placing ties to shim up the rail. Because of the slope of the fill material, the plaintiff had to prop himself up with his left hand while he guided the ties in with his right hand. While the rails and ties were in mid-air, the chain broke and they fell on the plaintiff's left hand. It took approximately six minutes to remove the track and ties from the plaintiff's hand.

The plaintiff sought emergency treatment and spent the weekend in the hospital. The following Monday, the plaintiff went to see a physician, selected by the defendant, who specialized in the treatment of hands. Between 1989 and 1992, the plaintiff underwent seven surgical procedures, primarily on the long and ring fingers, to restore function to his left hand.

The plaintiff received treatment and did not work from the time of the accident until June 1990. He then worked until December 1990, at which time he took off until May 1991 for further treatment. He then returned to work until December 1991. He did not work for the railroad thereafter.

In February 1992, a company doctor examined the plaintiff for fitness for duty and medically disqualified him from performing his previous job on the railroad. In September 1992, the surgeon who operated on the plaintiff's hand advised the defendant's Division Engineer that the plaintiff was restricted from lifting anything over ten pounds with his left hand and was prohibited from using vibrating tools and sledge hammer.

The defendant had the plaintiff undergo a field test, which he was unable to successfully complete. Plaintiff was taken off the payroll on October 31, 1992, and was not offered another position.

Between the time of the original accident in 1989 and the plaintiff's last absence in October 1992, he received his regular wages

under the defendant's wage continuation program, and he continued to accrue credited months towards eligibility for the Railroad Retirement Board disability pension. The first point on appeal concerns the admission of the plaintiff's benefit payments under the Railroad Retirement Act.[1]

When the case was first tried, the jury returned a verdict of $500,000. The trial court sustained the defendant's motion for new trial on the ground that a mitigation instruction was not given. No appeal was taken. The case was retried, and the jury returned a verdict in the amount of $1,400,-000 for the plaintiff. The court sustained the defendant's motion for new trial on two grounds, which now have been briefed on appeal.

Defense counsel sought to introduce evidence of the plaintiff's disability payments. The trial court refused to allow the plaintiff to be questioned about his pension proceeds because it violated *Eichel v. New York Cent. R.R. Co.*, 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963). In the defendant's motion for new trial, defendant challenged the trial court's decision to exclude, from the jury's consideration, the fact that the plaintiff had been receiving, and would continue to receive, disability benefits. The trial court reversed its decision excluding the evidence, believing *Moore v. Missouri Pac. R.R. Co.*, 825 S.W.2d 839 (Mo. banc 1992) to be the controlling case law.

■ The defendant maintains that the benefits paid by the Railroad Retirement Board were not a "collateral source" payment but were relevant to plaintiff's ability and incentive to work and to his obligation to mitigate damages. Further, the defendant argues that even if the evidence is generally excludable, the plaintiff had "opened the door" to its admission. Specifically, the defendant contends that the plaintiff's vocational rehabilitation expert, Dr. Samuel Bernstein, invited introduction of the evidence

when he testified that the plaintiff was well-motivated to work. Plaintiff maintains that the evidence of his benefits was not admissible under any set of facts because they constituted collateral source evidence.

■ On a motion for new trial, a trial court may reconsider its rulings on discretionary matters and may order a new trial if the court believes its discretion was not wisely exercised and that the losing party was thereby prejudiced. *State ex rel. Missouri Highway and Transp. Comm'n v. Pedroley*, 873 S.W.2d 949, 953 (Mo.App.1994). While appellate courts are more liberal in upholding the grant of a new trial than in denying it, the error complained of still must be prejudicial to the party seeking the new trial. *VonSande v. VonSande*, 858 S.W.2d 233, 236 (Mo.App.1993). The error complained of here is that the evidence which was excluded would have been used to rebut Dr. Berstein's testimony.

■ However, the discretion accorded the trial court in granting a motion for new trial presupposes a determination of fact, not law. *Highfill v. Brown*, 340 S.W.2d 656, 664 (Mo.1960). The trial court must not only be dissatisfied with the verdict, but there must be some compelling reason to warrant its dissatisfaction. *Van Loon v. St. Joseph Ry., Light, Heat & Power Co.*, 271 Mo. 209, 195 S.W. 737 (1917). The trial court's discretion may not declare incompetent evidence to be admissible or competent evidence to be inadmissible.

*Eichel v. New York Cent. R.R. Co.*, 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), is the seminal case on the issue of the admissibility of disability payments. In *Eichel*, the Supreme Court held that evidence of the plaintiff's receipt of disability pension payments under the Railroad Retirement Act should not have been received into evidence. *Id.*, 375 U.S. at 254–55, 84 S.Ct. at 317. In so finding, the Court stated:

> After 20 years of credited service with the defendant, the employee qualifies for a disability pension. The employee is limited to $400 per month outside earnings; any earnings in excess decrease his $1,500 monthly pension dollar for dollar.

---

1. The Railroad Retirement Board annuities are funded partially by the employer and partially by the employee. Under Tier Two, the employee pays 4.9 percent on his first $45,000 of earnings and the employer pays 16.1 percent. Contributions to the fund by both parties are mandatory.

At the trial, counsel for respondent argued that the pension would show "a motive for [petitioner's] not continuing work, and for his deciding not to continue going back to work after the last accident." On the basis of this argument the Court of Appeals concluded that the disputed evidence should have been admitted because: "Its substantial probative value cannot reasonably be said to be outweighed by the risk that it will ... create substantial danger of undue prejudice through being considered by the jury for the incompetent purpose of a set-off against lost earnings." We disagree. In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension.

*Id.* (footnote omitted).

*Eichel* instructs that the relevancy of the evidence is not the key issue but rather that it is the balancing of unduly prejudicial evidence against its probative value. The court came down on the side of the potential harm that may be caused by the introduction of this evidence outweighing its probative value. The court held it is improper for disability pension benefits to be considered by the jury in assessing mitigation of damages or to show malingering. In *Moore v. Missouri Pac. R.R. Co.*, 825 S.W.2d 839, 842 (Mo. banc 1992), the court acknowledged and followed the principle of *Eichel.*

The defendant maintains that the rule set forth in *Eichel* is not absolute and that Dr. Bernstein's testimony opened the door to rebuttal evidence of the plaintiff's pension benefits. At trial, Dr. Bernstein was asked what recommendations he had for vocational retraining or rehabilitation of the plaintiff. He stated:

> *I felt [the plaintiff] was well motivated.* That's number one. Motivation is not a problem, as I saw it, in this particular case.
>
> \* \* \* \* \* \*
>
> First, he can't go back and do what he did. That's just that. *Secondly, the man*

*wants to do something with his life. He's interested in working.*

\* \* \* \* \* \*

> Because I felt that he was *motivated and because he's motivated,* I want to encourage him to go—I told him to look.

The trial court held in its order granting the defendant's motion for new trial that Dr. Bernstein's testimony opened the door to evidence of the disability payments. Specifically, the trial court stated:

> [T]he disability payments create a reason for plaintiff not to secure employment. Plaintiff receives $1500 per month in disability payments. If he earns more than $400 per month the disability payment is correspondingly reduced.... Not working for that amount allowed him to create the impression before this jury that he had no income. This no doubt encouraged the jury to award him substantial damages.... Some limited evidence about the disability payments should have been admitted to challenge Dr. Bernstein's comments about motivation.

 The plaintiff first argues that a witness for the plaintiff cannot open the door, claiming that only the plaintiff, and he alone, can raise the issue of hardship or financial distress to permit introduction of the evidence of plaintiff's retirement benefits. We have not located any authority that suggests such a requirement. The plaintiff relies primarily on *Moore v. Missouri Pac. R.R. Co.* for this argument. Contrary to his assertion, *Moore* does not restrict the introduction of the rebuttal evidence to those times when the plaintiff himself raises the issue of his dire financial condition. The court in *Moore* observed that "[t]here is no functional distinction between the plaintiff injecting his dire financial condition on direct examination or on cross-examination." *Moore,* 825 S.W.2d at 842. Actually, *Moore* expanded the admissibility of the rebuttal evidence to the situation when the plaintiff opens the door by testifying to his dire financial condition on cross-examination. *Id.* at 842–43. Importantly, the court stated that "it is the raising of plaintiff's financial condition with the jury" that permits the defendant to rebut with evidence of other financial assistance avail-

able to the plaintiff, irrespective of whether the evidence is injected purposefully or through inadvertence. *Id.* at 843. The plaintiff therefore cannot circumvent the rule by offering testimony of his financial hardship through an expert instead of by his own testimony. We are not persuaded that only the plaintiff himself may open the door to this rebuttal evidence. The plaintiff invites such evidence if his expert witness testifies to plaintiff's financial distress. The admission of the disability and retirement benefits is dependent on the direct testimony of plaintiff's adverse financial condition and not upon which witness offers the testimony.

The defendant correctly argues that there are exceptions to the rule set forth in *Eichel. Gladden v. P. Henderson & Co.*, 385 F.2d 480, 483–84 (3rd Cir.1967), *cert. denied*, 390 U.S. 1013, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968), and *Lange v. Missouri Pac. R.R. Co.*, 703 F.2d 322, 324 (8th Cir.1983), both determined that an exception to *Eichel's* general rule of inadmissibility existed in those situations where the plaintiff injects his financial condition into the lawsuit. In *Gladden*, the plaintiff testified that "my bills got behind and when I went back to work, that was one of the main reasons I went back to work, was to try to catch my bills up and support my family." *Gladden*, 385 F.2d at 482. The court found that the defendant was not required to leave this testimony unchallenged. *Id.* at 483–84. Likewise in *Lange*, the court permitted the defendant to rebut the plaintiff's testimony that he had to return to work immediately after back surgery because he had no savings or disability income with evidence that he had settled a workers' compensation claim for a lump sum payment. *Lange*, 703 F.2d at 323–24.

In *Moore v. Missouri Pac. R.R. Co.*, 825 S.W.2d 839, 842 (Mo. banc 1992), the Missouri Supreme Court relied on *Gladden* and *Lange* in recognizing an exception to *Eichel's* general rule of inadmissibility. In *Moore*, the plaintiff testified on cross-examination that he could not go back to a therapist because he could not afford it. *Id.* at 842. The court therefore permitted the defendant to challenge this testimony by inquiring about the plaintiff's collateral source payments. *Id.*

If the plaintiff injects his financial condition into the proceedings and implies financial distress, the defendant may challenge this evidence by showing that the plaintiff had financial assistance available. *Moore*, 825 S.W.2d at 843. Here, Dr. Bernstein testified about the plaintiff's motivation to work. The plaintiff's evidence here was not similar to Moore's testimony that he could not continue his therapy because he could not afford it, *id.* at 842, or an employee claiming he was forced to return to work immediately after surgery because he had no money, *Lange*, 703 F.2d at 323–24, or the employee's testimony that he was behind in his bills and had to go back to work to catch up on his bills and support his family, *Gladden*, 385 F.2d at 482. In these cases, the plaintiff's evidence directly injected the financial situation into the case, thereby allowing the admission of collateral source evidence to challenge it. The plaintiff's evidence here did not suggest financial distress for the purpose of appealing for jury sympathy or to increase the jury's award of damages. *See Mateer v. Union Pac. Sys.*, 873 S.W.2d 239, 245 (Mo. App.1993). In fact, being well motivated to work falls far short of the mark of the requirements of *Moore* that there be evidence of plaintiff's financial state designed to evoke sympathy from the jury. *See Moore*, 825 S.W.2d at 843. The trial court properly excluded the evidence, and its exclusion cannot be a point of error on which to grant a new trial.

■ The trial court granted the defendant a new trial on the alternative ground that plaintiff's closing argument was improper. The plaintiff raises a number of points in defense of his closing argument. First, he maintains that the defendant failed to object to the alleged improper arguments as a choice of trial strategy and should not be allowed plain error review. He also contends that the trial court held, in its order granting a new trial, that the jury award was not excessive, thereby negating any basis for the new trial. Finally, he contends that his closing argument consisted of proper comments on the evidence or permissible inferences

drawn from the evidence and fair retorts to contentions made by the defendant.

In his motion for new trial, the defendant claimed that plaintiff's closing argument violated Rules 3.3 and 3.4 of the Missouri Rules of Professional Conduct and the trial court's rulings on defendant's pretrial motions in limine, which dealt with the Americans With Disabilities Act and the discharge and accommodations of the plaintiff. The defendant contended that these violations incited the bias and prejudice of the jury as evidenced by the excessive damage award to the plaintiff.

Although the defendant failed to object to the plaintiff's closing argument, the point of error was preserved in its motion for new trial. Following arguments, the trial court ordered a new trial on this alternative point, stating:

> Defendant is also entitled to a new trial due to the closing argument of plaintiff. That argument taken as a whole exceeds the bounds of propriety. It attacks opposing counsel and suggests he has no interest in the truth. It improperly suggests that the plaintiff risked being fired for completing the washout repair in another way. It discusses kicking plaintiff off the railroad to create animosity toward the defendant. The argument is designed to inflame the jury. Apparently, it worked. Within one hour the jury returned a 1.4 million dollar verdict without requesting any of the exhibits.

Plaintiff directs our first inquiry to defense counsel's failure to object. Plaintiff properly points out that an objection would have permitted the trial court to take corrective action by its ruling, instructions to counsel or the jury, or both. Further, he contends, an objection and the court's ruling would have allowed him to correct his argument. Plaintiff's argument is not without merit. It points out the significance of timely objections as well as the hazards of plain error review. We are certain that these factors were not lost on the trial court which considered them, among others, when it decided the motion pursuant to the plain error rule. While the plaintiff's contention must be given serious consideration by the trial court, we

are presented with another, equally sound proposition of law, which is that each case must be decided on its own facts. The motion for new trial enables the trial court to consider its rulings in a more reflective atmosphere. *Farley v. Johnny Londoff Chevrolet, Inc.*, 673 S.W.2d 800, 804 (Mo.App.1984).

Further, Rule 78.08 permits the trial court to review post trial matters, which affect substantial rights, pursuant to plain error, when the court finds that a manifest injustice or miscarriage of justice has resulted. The review is accomplished by the trial judge, who occupies a far better position than this court to fairly determine the effects of unobjected argument, evidence, or court instructions on the jury's verdict.

There is ample authority for the trial court to grant a new trial because of counsel's improper argument even though there was no objection to the argument. In *Greenwell v. Huffman*, 506 S.W.2d 28, 31 (Mo.App.1974)(citing *Robbins v. Brown–Strauss Corp.*, 363 Mo. 1157, 257 S.W.2d 643 (1953)), the court stated:

> The trial judge was in an excellent position to gauge the effect of the improper and objectionable argument, and, if he deemed the overall effect to have been so prejudicial as to deprive plaintiff of a fair and impartial trial as he undoubtedly did, he had the duty to cause the entry of the new trial order, *although no objection had been made to such argument.*

*Id.* at 31 (emphasis in original)(*Robbins*, 257 S.W.2d at 648). *See also Beer v. Martel*, 332 Mo. 53, 55 S.W.2d 482, 484 (1932). Our case law holds that, not only does the trial court have the authority to grant a new trial, it has the duty to do so when the effect of the argument was so prejudicial that a party did not receive a fair trial. This points out a meaningful distinction between the denial and grant of a new trial. "On appeal, when a party claims error because the trial court *denied* him a new trial, the party ordinarily must have made a proper and timely objection to the claimed error to preserve it for review...." *Farley v. Johnny Londoff Chevrolet, Inc.*, 673 S.W.2d 800, 804 (Mo.App. 1984). When a party claims error, as here,

because the trial court *granted* the opposing party a new trial, the opposing party need not have made an objection to the error upon which the trial court granted a new trial. *Id.* We defer to the trial court's discretion granted in Rule 78.08 to review for plain error affecting substantial rights.

▉ Next, the plaintiff contends that the trial court held the verdict not to be excessive and this showed that the jury was not moved by bias, passion or prejudice. The plaintiff asserts that the trial court's express finding that the jury verdict of $1.4 million was *not* excessive is inconsistent with a finding of prejudice. In support of his argument, the plaintiff cites to both a passage in the trial court's order granting the defendant's motion for new trial, wherein the court acknowledged that the plaintiff was severely injured, and the court's cover letter accompanying the order, wherein the court stated that there was no doubt that a jury would return a substantial verdict each time the case was tried.

▉ A trial court's ruling on a motion for a new trial is not required to set forth its reasons for the conclusion reached or the mental process by which the determination was made, *Resco Constr. Co. v. Dawson Cabinet Co.,* 656 S.W.2d 324, 326–27 (Mo.App. 1983), and in those cases when it does, its efforts should be considered as no more than an attempt to explain the order to the parties and their attorneys. Even in those cases where the court's reasons or observations may appear inconsistent with its ruling, the decision is conclusively presumed to have been made on the ground stated in the order. *Id.*

In *Bierman v. Langston,* 304 S.W.2d 865, 867 (Mo.1957), the order granting a new trial because of an excessive verdict was unambiguous, but the memorandum accompanying the order stated a legal and non-discretionary ground. The two reasons were at variance with each other. The court held that the order allowing a new trial was the only official repository for the court's grounds or for reasons for sustaining a motion for new trial, and that, in those situations where the order is unambiguous and the memorandum countervails or disputes the order, the memorandum does not constitute a substitute for the order. *Id.*

An observation that plaintiff was severely injured and that a jury will return a substantial verdict in another trial are not necessarily inconsistent with a ruling that the verdict is excessive. These remarks explained to the parties and their attorneys that a jury verdict less than $1,400,000 would still be substantial for the injuries that the plaintiff sustained. A trial court's explanation for its ruling is a practice which should not be discouraged. However, the trial court's comments, obviously designed to provide an explanation, cannot be used to misconstrue its order.

▉ However, whether the verdict was excessive is not necessarily a controlling factor in determining whether the closing argument was prejudicial. In *Tune v. Synergy Gas Corp.,* 883 S.W.2d 10, 16–17 (Mo. banc 1994), the trial court allowed plaintiff to argue a specific dollar figure for damages for the first time in the final portion of his closing argument although no damage figure was mentioned in the initial part of his argument. Judge Thomas, writing for a majority of the court, overruled prior case law that held that the error was prejudicial only if the damages were excessive. *Id.* at 21–22. The court noted that the verdict of $2,850,000.00, even considering the plaintiff's serious injuries, was very substantial and that it was more reasonable to assume that the improper argument contributed to an increase in the damages rather than to assume the contrary, even though the increased verdict may not be excessive. *Id.* at 22. However, it is usually impossible to determine whether or how much such an erroneous argument may have contributed to the verdict. *Id.* at 21. The court adopted the rule derived from *Lester v. Sayles,* 850 S.W.2d 858 (Mo. banc 1993), "that the party responsible for error relating to argument on the issue of damages is charged with a rebuttable presumption that the error was prejudicial." *Id.* at 22. The holding places upon the party who committed the error the responsibility for rebutting the error's prejudicial effect, irrespective of the size of the verdict.

The plaintiff's final position is that there was no impropriety in his closing arguments. The plaintiff argues that his closing argument was based upon permissible inferences reasonably drawn from the evidence and was a fair retort to arguments asserted by the defendant. In evaluating the plaintiff's claims, we are cognizant of the fact that the trial court is in the best position to appraise the consequence of closing argument and that the appellate court may intervene only if it concludes that the trial court abused that discretion. *Hammer v. Waterhouse*, 895 S.W.2d 95, 105 (Mo.App.1995).

The trial court made its decision based on the overall tenor of plaintiff's closing argument. The court noted examples wherein the plaintiff's counsel attacked opposing counsel by suggesting that he "had no interest in the truth," where he improperly suggested that the plaintiff risked being fired for not repairing the washed out track bed in the way suggested by the defendant, and where he made an unjustifiable argument about the plaintiff's termination with the purpose of creating animosity toward the defendant. The court characterized the plaintiff's argument as designed to inflame the passions of the jury.

The parties argue back and forth on this issue, placing their own spin on their respective positions as to each other's understanding of the argument: why the argument was based on the evidence, whether it was a fair retort, and why it was no more or less than a malicious attack on the defendant or its attorney. The plaintiff casts his argument in neutral terms to suggest that there was no intent to inflame the jury. On the other hand, the defendant maintains that the plaintiff's only purpose was to incite jury passion and bias.

The argument by plaintiff's counsel did make repeated references to opposing counsel, including that: (1) all of the defendant's safety rules which had been marked and placed in evidence were now opposing counsel's rules and that opposing counsel decided they had been violated; and (2) that opposing counsel circumvented the truth when trying to explain away plaintiff's argument. Plaintiff's counsel also made references to the defendant that included: (1) that if an employee got hurt at this company, its defense is that he broke a safety rule, and if he can't work, the company will fire him and the employee should not look to it for compensation; (2) that the company "could care less" about safety; and (3) a personal opinion on the credibility of one of the defendant's witnesses. Plaintiff's counsel then stated the following:

> I think there is a real strong inference here that the railroad wanted to avoid the whole medical question and stage this field test, brought him back, failed him so they could run him right off the railroad. They're tired of paying his wage continuation. They're tired of paying them. If we can get rid of this guy who, for 20 years gave us the sweat off his brow and didn't give them a moment's problem.... He wasn't good enough for Kansas City Southern anymore. They got rid of him. They didn't accommodate him like people are accommodated on other jobs with disability.

We believe that the trial judge was justified in its determination that plaintiff's closing argument was unwarranted, untrue, and that the contentions noted above were not fair retorts, fair comments on the evidence, or reasonable inferences to be drawn therefrom. These remarks were not on the merits of the case, but rather were an attempt to inject hatred and prejudice against opposing counsel and his client. Reckless assertions by counsel, unwarranted by proof and intended to arouse hatred or prejudice, are condemned as tending to cause a miscarriage of justice. *Critcher v. Rudy Fick, Inc.*, 315 S.W.2d 421, 427 (Mo.1958). A charge against opposing counsel is to be decried. *See Tucker v. Kansas City S. Ry. Co.*, 765 S.W.2d 308, 311 (Mo.App.1988).

We are mindful that counsel is afforded wide latitude to argue the evidence and inferences drawn from the evidence. "[T]he law indulges a liberal attitude toward argument, particularly where the comment complained of is fair retort or responds to prior argument of opposing counsel." *Keith v. Burlington N. R.R. Co.*, 889 S.W.2d 911, 915–16 (Mo.App.1994). However, a vigorous closing argument must be directed to the facts, to the reasonable inferences drawn

therefrom, to fair retort to opposing counsel's argument, and to the law as applied to the evidence.

The determination as to whether a new trial is warranted because of jury argument rests within the trial court's sound discretion. *Cook v. Cox,* 478 S.W.2d 678, 682 (Mo.1972). Appellate review of such discretion is limited to a determination of whether there has been an abuse of that discretion. *Id.* Deference is given to the better position of the trial judge to evaluate the prejudicial effect of the overall tenor of the closing argument. The trial judge heard the closing argument here and viewed it in its entirety. The court concluded that the argument's purpose was to inject matters of an inflammatory nature before the jury. The trial court's award of a new trial because of unwarranted and unjustified argument, was not an abuse of discretion.

The defendant has raised other issues, which are moot and we trust will be resolved on retrial.

Order granting a new trial is affirmed.

SMART and EDWIN H. SMITH, JJ., concur.